**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | |
|---|---|
| **JOE IRVIN**, on behalf of himself and others similarly situated, | Case No. 3:25-cv-00242-LMM |
| Plaintiff, | Hon. Leigh Martin May |
| v. | |
| **SONIC INDUSTRIES SERVICES, LLC**, | |
| Defendant. | |

## <u>DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Sonic Industries Services, LLC ("Sonic") hereby respectfully moves to dismiss all claims asserted in Plaintiff Joe Irvin's putative class action Complaint (Dkt. 1) with prejudice and, in support thereof, provides the following grounds:

## I.    <u>INTRODUCTION</u>

Plaintiff's threadbare Complaint alleges, in conclusory fashion and without sufficient requisite factual support, that Sonic violated 47 C.F.R. § 64.1200(c)(2)—a regulation promulgated under Section 227(c) of the Telephone Consumer Protection Act ("TCPA"). That regulation, on its face, prohibits certain "telephone calls" to certain numbers properly listed on the National Do-Not-Call ("DNC") Registry. Plaintiff's claim in this action rests squarely on alleged text messages (not phone calls)

that he vaguely avers were sent by "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf" in violation of the TCPA. Dkt. 1, ¶¶ 31, 33. *See also id.,* ¶ 24 (concluding Sonic "delivered" the texts or "caused" them "to be delivered" by a third party). As discussed below, however, Plaintiff's Complaint does not meet federal pleading standards or state a plausible TCPA claim.

Although it lacks sufficient requisite supporting facts, the primary fatal defect with Plaintiff's Complaint requiring its dismissal under Rule 12(b)(6) is a legal one. Specifically, Plaintiff's lone claim against Sonic fails as a matter of law because Section 227(c) of the TCPA limits the private right of action to persons who "received more than one ***telephone call***" in violation of the regulations prescribed under the statute. 47 U.S.C. § 227(c)(5) (emphasis added). Various federal courts, including in this Circuit, have thoroughly analyzed this issue and held that, under the plain and unambiguous language of the statute, text messages are not "telephone calls" for purposes of Section 227(c) and are insufficient to support such a claim. *See, e.g., Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025) (dismissing claim with prejudice under Rule 12(b)(6) "because a text message is not a 'telephone call'" under Section 227(c) and, therefore, the plaintiff failed to "state[] a plausible claim"); *El Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *1-2 (M.D. Fla. Oct. 24, 2025) (ruling similarly and dismissing); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 898-902 (C.D. Ill. July 21, 2025)

(same), *appeal filed sub nom.,* No. 25-2398 (7th Cir., August 12, 2025). As Plaintiff's only TCPA claim here is based on text messages, it was doomed to fail from the start.

But even if, *arguendo*, text messages are covered by Section 227(c) of the TCPA, federal courts do not hold TCPA plaintiffs to lower pleading standards. Nor do they give TCPA plaintiffs armed with mere conclusions a free pass to discovery just because the TCPA was designed as a remedial statute.[1] Rather, it is well-established that, to satisfy federal pleading standards, all TCPA plaintiffs must first plead actual facts, without the benefit of any discovery, supporting a viable theory of TCPA liability (*i.e.,* direct or vicarious liability) against the defendant.[2] This rule requires Plaintiff here to plausibly allege, with sufficient non-conclusory supporting facts, that Sonic: (i) itself, and not a third party, took the steps to "physically" send the

---

[1] Indeed, as the FCC once noted, while it is a remedial statute originally designed to protect consumers from harassing telemarketers, the TCPA unwittingly spawned a cottage industry of class action litigation in this country, "has strayed far from its original [intended] purpose," and has "become the poster child for lawsuit abuse" by profit-seeking entrepreneurial plaintiffs and their counsel, ever since its enactment in 1991. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). Given this potential for abuse, federal courts across the country have dutifully fulfilled their gatekeeping role under the Federal Rules of ensuring such claims meet the plausibility threshold and thus have strictly held TCPA plaintiffs to applicable federal pleading standards, while still honoring the TCPA's intended remedial purpose.

[2] *See, e.g., Tuso v Lennar Corp.,* 2024 WL 1239474, at *4 (S.D. Fla. Mar. 22, 2024) ("Because [plaintiff] has failed to allege that the Defendant is liable—either directly or vicariously—his [TCPA] claims must be dismissed."); *Carson v. Home Depot, Inc.,* 2022 WL 2954327, at *5 (N.D. Ga. July 26, 2022) (Thrash, J.) (ruling similarly).

subject communications directly to Plaintiff's cell phone; or (ii) had an agency relationship with or control over any third parties who did so. At the same time, it is equally well-accepted that taking an equivocating "either/or" approach and concluding that either the defendant or a third party "agent" or "affiliate" of the defendant "delivered" the subject communications or "caused" them to be delivered is insufficient to plead such theories. *See, e.g., Melito v. Am. Eagle Outfitters, Inc.,* 2015 WL 7736547, at \*4 (S.D.N.Y. Nov. 30, 2015) (dismissing on these bases because "Plaintiffs' conclusory assertions that [defendant] sent or caused the text message to be sent is simply a legal conclusion devoid of further factual enhancement."); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at \*4–6 (D.N.J. Mar. 30, 2023) (dismissing and finding the plaintiff's allegations that the subject calls were "from Defendant, its employees and/or agents" was insufficient to allege TCPA liability theory). At its core, that is all Plaintiff's Complaint alleges here. Consequently, it should be dismissed under Rule 12(b)(6) for this additional reason.

## II.  <u>RELEVANT ALLEGATIONS</u>

Plaintiff's Complaint is based almost entirely on conclusions and contains few (if any) plausible facts. In pertinent part, Plaintiff vaguely alleges that he received an unspecified number of "text messages in August, September and October 2025" presumably on his cell phone number (although he does not refer to the subject number as such but avers that he "does not have a traditional landline"). Dkt. 1, ¶¶ 15,

16, 21. Plaintiff claims he received these text messages after registering his number on the National DNC Registry. *Id.* ¶ 20. Plaintiff then baldly concludes that these text messages were sent by "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf" in purported violation of the TCPA. *Id*. ¶¶ 31, 33. *See also id.,* ¶ 24 (proposed class definition, concluding that Sonic "delivered" the texts or "caused" them "to be delivered" by a third party).

## III.  <u>APPLICABLE LEGAL STANDARDS</u>

Rule 12(b)(6) authorizes dismissal for failure to state a claim for relief. Any claim brought in federal court mandates the pleading of sufficient supporting facts; therefore, a mere "formulaic recitation of the elements" fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "bare assertion" and "conclusory allegation[s]" will not suffice to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Instead, Plaintiff must "include factual allegations for each essential element" of his claim. *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). However, the pleading of "[c]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal" and are not to be taken as true under this Rule. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003); *see also Chaparro v. Carnival Corp., 693* F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are 'merely consistent with a defendant's liability' fall short of being

facially plausible."); *Jaafar Inv. Corp. v. Scottsdale Ins. Co.*, 2019 WL 8014368, at

*1 (S.D. Fla. June 7, 2019) ("Defendant is correct that Plaintiff supports his allegations

with insufficient specific facts about the nature and extent of [his] alleged loss.").

## IV.    <u>ARGUMENT</u>

As demonstrated below, Plaintiff fails to state a plausible TCPA DNC claim.

Because the primary defect in his Complaint is legal and cannot be cured by any

factual amendment, the entire Complaint should be dismissed with prejudice.

### A.    <u>The Complaint Should Be Dismissed Under Rule 12(b)(6) Because Section 227(c) of the TCPA Does Not Apply to Text Messages.</u>

On its face, Section 227(c) of the TCPA provides a private right of action only

to "[a] person who has received more than one ***telephone call*** within any 12-month

period … in violation of the regulations prescribed under this subsection …." 47

U.S.C. § 227(c)(5) (emphasis added). As courts in the Eleventh Circuit and elsewhere

have correctly observed, this section of the TCPA (which has existed since its

enactment in 1991) "does not mention text messages or SMS messages, and nowhere

does the TCPA define 'telephone call' to include text and/or SMS messages." *Jones*,

792 F. Supp. 3d at 904; *see also Davis*, 2025 WL 2491195, at *2–3 (similarly ruling

that the term "telephone call" is not defined to include text messages); *El Sayed,* 2025

WL 2997759, at *2 (same, citing *Davis* with approval). The implementing regulations

for Section 227(c) likewise do not reference text messages. 47 C.F.R. § 64.1200(c).

Moreover, as the Supreme Court recently reiterated, "[e]very statute's meaning is fixed at the *time of enactment*." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (emphasis added). Federal courts "must interpret what Congress wrote" when the statute was enacted and cannot rewrite the TCPA to update it for modern technology. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 405, 409 (2021). As one court recently explained, "[t]ext messaging was not an available technology in 1991 [when the TCPA was enacted], and thus 'telephone call' would ***not*** have included text messages or SMS messages." *Jones*, 792 F. Supp. 3d at 899 (emphasis added); *see also Davis*, 2025 WL 2491195, at *1 (the court's conclusion that a text is not a "telephone call" is "supported by the ordinary public meaning at the time of the provision's enactment"); *El Sayed*, 2025 WL 2997759, at *2 ("In addition to the fact that in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication, the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction."). "Thus, under a plain reading, Section 227(c)(5) … does not regulate text messages" which did not exist in 1991. *Jones*, 792 F. Supp. 3d at 899. *See also Davis,* 2025 WL 2491195, at *1 ("Certainly, no ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.").

The well-reasoned *Davis* and *El Sayed* decisions above reflect a growing body of case law in the Eleventh Circuit finding that text messages are not covered by the TCPA's DNC rules. This Court should rely on the sound logic and analysis of its sister courts, which correctly concluded that texts are not covered by Section 227(c) of the TCPA. *See Davis,* 2025 WL 2491195, at *1-4 (dismissing DNC claim, holding "Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter. Whatever its reasoning, it clearly limited the private right to those receiving 'telephone calls.'"); *El Sayed*, 2025 WL 2997759, at *2 (dismissing and finding that "[t]he omission of 'text message' from paragraph 227(c)(5) confirms that the provision applies only to a 'telephone call.'").

*Davis* and *El Sayed* are also in accord with Eleventh Circuit precedent providing that courts interpreting federal statutes must "'presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.'" *Davis*, 2025 WL 2491195, at *4 (quoting *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025)); *see also El Sayed*, 2025 WL 2997759, at *2 ("'[W]hen Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous.'") (quoting *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025)).

This further undermines any argument that text messages are "calls" under Section 227(c) of the TCPA. And it is axiomatic that "[i]f a statute's language is plain" and unambiguous, like the TCPA's statutory text is, federal courts "'must enforce it according to its terms.'" *Gonzalez v. Amazon.com, Inc.,* 835 F.App'x 1011, 1011 (11th Cir. 2021) (quoting *King v. Burwell,* 576 U.S. 473, 135 S. Ct. 2480, 2489 (2015)). There is <u>zero</u> ambiguity here—text messages are not covered under the DNC rules.

Plaintiff may argue in response to this Motion that the term "telephone solicitation" is defined in 47 U.S.C. § 227(a)(4) to include "the initiation of a telephone call or message." But that definition does not alter the result. *First*, "Section 227(a)(4) does not refer to a '***text*** message'" and, as discussed above, "telephone call or message" could not have been interpreted in 1991 to include texts, which were not yet in existence. *Jones*, 792 F. Supp. 3d at 900 (emphasis added); *see also Davis*, 2025 WL 2491195, at *2 ("[H]owever Congress defines 'telephone solicitation'—and whatever Congress directed the FCC to do in terms of regulating certain 'telephone call[s] or message[s]'—the private right of action Congress created exists only for those who received multiple 'telephone calls.'" (citing 47 U.S.C. § 227(c)(5)). *Second*, as one court in this Circuit observed, "Congress's use of the phrase 'telephone call or message' in a neighboring provision…shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" *Davis*, 2025 WL 2491195, at *2.

Plaintiff may also refer to other regulations implemented by the FCC in the 2000's that mention text messages. However, the FCC's authority to implement regulations under Section 227(c) was expressly limited to "the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations" and in the **9 months** after December 20, 1991. 47 U.S.C. § 227(c). Those regulations were implemented in 19<u>92</u>, as authorized, and also do not refer to text messages. 47 C.F.R. § 64.1200(c); *see also In the Matter of Rules & Reguls. Implementing the TCPA*, 7 FCC Rcd. 8752 (1992) (also devoid of any discussion of text messages). Thus, any DNC regulations enacted thereafter exceeded the FCC's rule making authority.

Further, while the FCC previously stated in a 2003 Order that "calls" do include "text messages" in *some* circumstances, that Order only addressed text messages in the context of the TCPA's automated calling provisions, which falls under a different provision, *i.e.,* Section 227<u>(b)</u>. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115-16 at ¶ 165, n.603-605 (2003); *see also Jones*, 792 F. Supp. 3d at 900 ("[O]n its face…, the 2003 Order explicitly references only Section 227(b)"). But even if it were relevant, the FCC's prior 2003 interpretation above is not entitled to deference today, under recent Supreme Court precedent. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2013 (2025) (holding "the Hobbs Act does not preclude

district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct"); *see also Loper*, 603 U.S. at 401 (overruling *Chevron* deference, finding "*Chevron* gravely erred [ ] in concluding that the inquiry is fundamentally different just because an administrative interpretation is in play"); *Davis*, 2025 WL 2491195, at *4 n.3 ("[E]ven if the FCC['s 2003] order were contrary to this court's conclusion, that would not preclude dismissal.").

This is true even though Section 227(c) of the TCPA affords certain rulemaking authority to the FCC. As the *Davis* court correctly observed: "*McLaughlin* … calls for 'appropriate **respect**,' not 'appropriate deference.' [] And the concepts are different. One can provide 'appropriate respect' to an agency's view without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text. Thus, even assuming the FCC order clearly defined 'telephone calls' as that term is used in § 227(c)(5), 'appropriate respect' for that conclusion would not require a different outcome here." 2025 WL 2491195, at *2 (quoting *McLaughlin*, 606 U.S. at 168) (internal citation omitted, emphasis added). In short, under binding federal precedent, all federal courts must "independently interpret" statutes under ordinary principles of statutory interpretation—even where the statute delegates discretionary authority to a government agency—and must interpret the statute as written by Congress as "if no agency were involved." *Loper*, 603 U.S. at 401.

Applying *McLaughlin*, *Loper*, and the other applicable federal authority above to the plain language of the statutory text at issue in this case leads to one result—the TCPA's DNC rules simply do not extend to certain forms of communication, like text messages, that did not exist at the time the TCPA was enacted in 1991. *See Jones*, 792 F. Supp. 3d at 899 (citing *Loper* and https://time.com/3612277/text-message-history-future/ ("The world's very first text message, sent Dec. 3, 1992….")).

Lastly, Sonic anticipates that, in response to this Motion, Plaintiff may cite a few decisions where district courts appeared to reach different conclusions, to suggest that *Jones*, *Davis,* and *El Sayed* are flawed or do not represent the majority view. As Sonic will show in greater detail in its reply brief, however, all these cases are inapplicable here because, *inter alia,* they either: (i) pre-date or did not apply *McLaughlin* and *Loper*; (ii) did not perform any statutory construction analysis or did not perform one properly in accordance with binding federal precedent; (iii) relied heavily on outdated binding Ninth Circuit and other case law (which is not binding here) and/or on FCC authority (which is not entitled to any deference today after *McLaughlin* and *Loper* in any event) discussing whether text message are covered by the automated call provisions of Section 227(b), which again is not at issue in this case; (iv) applied modern dictionary definitions, which is not permissible under *Facebook* and *Loper*; and/or (v) involved arguments that Sonic is not making here (such as whether cell phones are "residential"). In short, as Sonic will demonstrate,

none of those decisions should be applied or compel a different result in this case than was reached in the well-reasoned *Jones*, *Davis,* and *El Sayed* cases discussed above.

In sum, although Plaintiff may believe that there are compelling reasons to expand Section 227(c) of the TCPA to reach the realities of today's technologies, only Congress can do so. "It is not for [any] court to legislate by reading into the TCPA something that is not there" and courts must apply the statute as written. *Jones*, 792 F. Supp. 3d at 901; *see also Davis*, 2025 WL 2491195, at *3 ("Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter. Whatever its reasoning, it clearly limited the private right to those receiving 'telephone calls.'"); *id*. ("[T]he court's role is not to look beyond clear language to ascertain Congress's purpose. Instead, the best evidence of that purpose is the language of the statute itself.")). As text messages plainly are not covered by Section 227(c) of the TCPA, and as this legal defect is incurable, Plaintiff's entire Complaint should be dismissed <u>with prejudice</u>. *See, e.g., Davis, supra*.

## B.    <u>The Complaint Should Be Dismissed Under Rule 12(b)(6) Because It Fails to Sufficiently Plead Direct or Vicarious TCPA Liability.</u>

The Complaint should also be dismissed because Plaintiff fails to plead a viable TCPA liability theory. There are "two potential theories of liability under the TCPA" that must be adequately pled in all cases to avoid dismissal under Rule 12(b)(6): "(1) direct liability; and (2) vicarious liability." *Rogers v. Postmates Inc*., 2020 WL

13

3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)). This rule means that, "[f]or a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call"—and there must be ***facts*** supporting such allegations to meet *Iqbal/Twombly*. *Pascal v. Agentra, LLC,* 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)).

Courts throughout the Eleventh Circuit have firmly adopted this rule. *See, e.g., Tuso,* 2024 WL 1239474, at *4; *Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *1-4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part,* 2024 WL 2794108 (May 31, 2024); *Carson,* 2022 WL 2954327, at *5 (each collecting cases and dismissing on these grounds under Rule 12(b)(6)). Moreover, failure to plausibly allege either liability theory warrants dismissal of any TCPA claim in its entirety, regardless of whether there were facts pled supporting other essential elements of the claim. *See, e.g., Tuso* and *Belleville, supra* (dismissing entire complaint on these bases); *see also Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject] text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted

claims.); *Hirsch v. Lyndon S. Ins. Co.,* 2019 WL 5110622, at *6 (M.D. Fla. June 7, 2019), *report and rec. adopted sub nom.,* 2019 WL 8370863 (Aug. 6, 2019), *aff'd,* 805 F.App'x 987 (11th Cir. 2020) (dismissing where plaintiff was "attempting to impose liability on Defendants for countless calls made throughout the United States … without [adequately] alleging who made the calls"). As shown below, Plaintiff in this case has failed to properly allege either direct or vicarious TCPA liability.

As to the former, federal courts have uniformly recognized that direct liability under the TCPA applies only to persons or entities that "initiate" or "make" telemarketing calls, which means to "***physically*** place" a call or send a text message directly to the plaintiff. *See, e.g., Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (discussing the differences between direct and vicarious TCPA liability and the accepted standards for pleading same under *Iqbal/Twombly*, and dismissing where the allegations did not "lead to the inference that [defendant] sent or was directly involved in [physically] sending the text messages at issue") (citing *In re Joint Petition filed by Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013) (emphasis added)). *Accord Tuso* and *Belleville*, *supra*.[3]

---

[3]    While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims like Plaintiff's (including those cited above and below, among many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the calls at issue. *See also Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018). This represents a clear majority rule.

Put differently, for direct TCPA liability to attach here, Plaintiff must plausibly allege that Sonic *itself*, and not a third party, ***physically*** sent (or "made" or "initiated") ***each*** text message at issue ***directly*** to his cell number. *See, e.g., Belleville,* 2024 WL 2342337, at \*4 (recommending dismissal where the plaintiff did not sufficiently allege that the defendant itself physically initiated each of the subject communications directly to the plaintiff); *Tuso,* 2024 WL 1239474, at \*4 (ruling similarly); *Carson,* 2022 WL 2954327, at \*5 (same); *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at \*1–2 (N.D. Ill. Sept. 22, 2021) (dismissing TCPA complaint where the allegations did not "allow the Court to reasonably infer that defendant is liable for each call" and holding "[a]t the very minimum, plaintiff must allege in her complaint that defendant made each call that she seeks to hold it [directly] liable for."); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at \*3 (N.D. Cal. Mar. 16, 2023) (dismissing where plaintiffs did not plausibly allege the "[d]efendant itself" made the calls); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at \*6 (S.D.N.Y. Feb. 6, 2023) (TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call").

Further, federal district courts have widely (and correctly) recognized that bare conclusions lacking specific factual support will not suffice to state a plausible direct TCPA liability theory. As one such court aptly noted, "[m]erely alleging that [a defendant or an agent] 'made' or 'initiated' [a] call"—like Plaintiff did here at best —

"is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). Additionally, "simply asserting a purported fact [like Plaintiff also does here at best] does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing TCPA case on this basis).

Countless courts in and beyond the Eleventh Circuit have ruled similarly and dismissed such conclusory TCPA claims like Plaintiff's on this basis. *See, e.g., Belleville,* 2024 WL 2342337, at *4 (recommending and approving dismissal where plaintiff alleged "in conclusory fashion that [d]efendant was directly involved in making" the subject calls without sufficient factual support); *Tuso,* 2024 WL 1239474, at *4 (dismissing where the plaintiff's "conclusory statement" as to direct TCPA liability was insufficient); *Matthews v. Senior Life Ins. Co.*, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (dismissing TCPA claim where complaint contained only conclusory allegations that the calls came "from" the defendant); *Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (dismissing on this basis, holding "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal"); *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) ("[A]t the pleading stage, plaintiff must allege facts to support his conclusion or belief that

defendant is the party that made the calls," and dismissing where, as here, plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue"); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing where the plaintiffs concluded one defendant "physically" placed the subject phone calls, noting that the "[p]laintiffs have not pleaded any ***facts*** supporting their inference that [defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)).

A myriad of courts have also recognized that even a call or text allegedly offering the defendant's products, identifying the defendant by name, and/or originating from the defendant in some fashion ***does not***, standing alone, allow for a plausible inference that the defendant itself (and not a third party) physically made or initiated any call or text for direct liability purposes. *See*, *e.g.*, *Meeks*, 2018 WL 1524067, at *1–5 (no direct liability, even though at-issue text identified the defendant by name and contained a link to its website); *Belleville*, 2024 WL 2342337, at *1-4 (dismissing on this basis, even though one caller allegedly said they were calling "from" the defendant and provided its website); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in

[physically] placing the calls"). Together, these well-reasoned authorities (among others) show that the alleged content of the subject communications alone is <u>not</u> dispositive of this issue and, thus, is insufficient to survive dismissal on this basis.

This accepted approach to evaluating the facial sufficiency of direct TCPA liability claims under Rule 12(b)(6) is logical, reflects a proper application of federal pleadings standards in the TCPA context, and recognizes that companies often hire third parties to handle their outbound communications. *See, e.g., Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) ("[A] defendant 'generally does not initiate calls [within the meaning of the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf."). For example, a company could "cause" a text message to be physically "delivered" by a third party vendor. Such a communication would naturally identify the defendant by name or sell its products (which is why the vendor was hired in the first place) and thus may have originated from the defendant in a very technical sense. But that text would not have been physically sent by the defendant itself ***directly***, which is what matters for direct TCPA liability. Logically, and as a matter of law, an ***indirect*** connection to a text sent by a third party simply is ***not*** "direct" TCPA liability. *See, e.g., Bennett, supra*; *Hossfeld v. Am. Fin. Sec. Life Ins. Co.,* 544 F. Supp. 3d 1323, 1331–32 (S.D. Fla. 2021) (TCPA defendants "cannot be directly liable for calls made by third parties"). And if a plaintiff could sufficiently allege a TCPA claim merely because the call

identified the defendant's name or products, there would be no need to differentiate between direct and vicarious liability theories in a complaint. That is <u>not</u> the law.

Moreover, while federal courts do not expect TCPA plaintiffs to know every detail to support liability at the pleading stage, they have consistently held that plaintiffs must adequately plead plausible facts supporting direct (or, alternatively, vicarious) TCPA liability without the benefit of discovery to avoid a dismissal under Rule 12(b)(6). *See, e.g.*, *Hurley v. Messer,* 2018 WL 4854082, at *4 (S.D. W.Va. Oct. 4, 2018) (dismissing where plaintiff did not sufficiently identify who physically placed the subject calls, noting "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"); *Hyatt v. J.B. Hunt Transp. Servs., Inc*., 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015) (ruling similarly). Rather, "[a]s a party to these calls [or, rather, alleged texts], Plaintiff should be able [and indeed is required] to provide greater detail" without any discovery. *Matthews,* 2025 WL 1181789, at *3 (quoting *Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020)).

Applying these firmly rooted legal principles here also dooms Plaintiff's entire Complaint. As noted above, Plaintiff vaguely avers that the subject texts were sent by "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf" in purported. violation of the TCPA. Dkt. 1, ¶¶ 31, 33. *See also id.,* ¶ 24 (alleging Sonic "delivered" the texts or "caused" them "to be delivered" by a

third party). Even if this Court treats these few ill-pled allegations as true (and it should not under *Iqbal/Twombly*), federal courts throughout the country have recognized that the alleged content of a call or text message, even if a defendant's name is mentioned or its products are sold (which is all Plaintiff offers at most, *see id.*, ¶ 21), is not dispositive of direct TCPA liability standing alone. *See* discussion at pp. 17-20, *supra*.

In fact, federal courts have that found such equivocating allegations are "woefully insufficient to state a claim of ***any sort***." *Maldonado-Rodriguez v. Citibank, N.A.*, 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added). This is particularly true when it comes to pleading TCPA claims, as federal courts nationwide have squarely rejected such a flawed "either/or" approach to pleading TCPA liability theories. *See, e.g., Melito,* 2015 WL 7736547, at *4 (dismissing similar complaint, holding "Plaintiffs' conclusory assertions that [the defendant] ***sent or caused the text message to be sent*** is simply a legal conclusion devoid of further factual enhancement.") (emphasis added); *Doyle,* 2023 WL 3984951, at *4–6 (dismissing, finding plaintiff's allegations the subject calls were "from Defendant, its employees and/or agents" insufficient for directly liability); *Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing on this basis where plaintiff concluded the caller's "numbers belonged to [defendant] Nano or Nano's agent," without supporting facts suggesting the defendant physically placed each call); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (a plaintiff

"simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plead any TCPA liability liability). This Court should join them here and should dismiss Plaintiff's Complaint on direct TCPA liability grounds.

Lastly, the well-accepted touchstone of a common law agency relationship in the TCPA context, as is required for vicarious TCPA liability, mandates plausible factual allegations suggesting the defendant had specific "control" over the literal "manner and means" of any third party caller's telemarketing campaign, as opposed to control over an agent generally. *See, e.g., Meeks*, 2018 WL 1524067, at *6 (dismissing where complaint lacked specific facts suggesting defendant controlled "whether, when, and to whom to send the text messages, along with their content"); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (dismissing on this basis where the plaintiff omitted facts supporting an inference of such specific "control"); *Rogers*, 2023 WL 2646468, at *6 (same); *Nelums, LLC*, 2023 WL 5607594, at *8 (same); *Rogers*, 2020 WL 3869191, at *8 (same). *See also Bank v. Vivint Solar, Inc*., 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (dismissing TCPA complaint where plaintiff did not allege facts suggesting defendant "had the power to give 'interim instructions' to [the agent], or any non-conclusory suggestion of 'direction' or 'control' by [the defendant] of [the agent]") (citation omitted)).

At the same time, a plaintiff obviously cannot conclude their way into a viable vicarious TCPA liability theory and withstand scrutiny under Rule 12(b)(6). *See, e.g., Abramson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) (dismissing where "allegations of vicarious [TCPA] liability [we]re conclusory in nature"); *Tuso*, 2024 WL 1239474, at *3-4 (dismissing where plaintiff did not allege proper facts showing common law agency for vicarious TCPA liability).

Here, beyond using legal buzzwords like "agents" and "affiliates" in his Complaint as noted above, which are conclusions and are not entitled to any presumption of truth, Plaintiff alleges no facts demonstrative of a common law agency relationship, or let alone that Sonic had "control" over the subject texting campaign.[4] Thus, his Complaint should also be dismissed on vicarious TCPA liability grounds.

All told, Plaintiff's conclusory allegations fall woefully short of meeting federal pleading standards and ultimately do not plausibly allege a direct or vicarious liability theory under the TCPA against Sonic, as is required. Therefore, this Court should dismiss his entire Complaint pursuant to Rule 12(b)(6) on these core bases, as well.

---

[4]    That Sonic's name or its products were allegedly mentioned in the subject texts alone does not support an inference of such control, either. *See, e.g.*, *Hale v. Teledoc Health, Inc.*, 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) (dismissing on this basis, holding: "[T]he inclusion of [defendant's] services in [the telemarketer's] insurance bundle, alone, is insufficient to permit even a circumstantial inference that [the telemarketer] called plaintiffs at [the defendant's direction or subject to [its] control").

**C.**    **Plaintiff Fails to Plead Facts Showing a "Willful" or "Knowing"**
**TCPA Violation and Thus Cannot Claim Treble Damages.**

Plaintiff also suggests that he is seeking treble damages for a willful/knowing TCPA violation. *See, e.g.,* Dkt. 1, ¶ 32 & Prayer for Relief. However, his allegations on this front also lack any supporting facts and thus do not meet applicable federal pleading standards. *See, e.g., Lary v. Trinity Physician Fin. & Ins. Servs.,* 780 F.3d 1101, 1107 (11th Cir. 2015) ("[T]he bare assertion in [plaintiff's] complaint that the defendants 'willfully' and 'knowingly' violated the [TCPA] was a legal conclusion, not an allegation of fact that we must accept as true."); *see also Sterling v. Securus Techs., Inc*., 2020 WL 2198095, at *6 (D. Conn. May 6, 2020) (dismissing claims of knowing and willful violations where allegations that TCPA violations were mere legal conclusions unsupported by further specific factual allegations). Therefore, Plaintiff's requests for treble damages should be dismissed under Rule 12(b)(6), at the minimum, since there are no supporting facts pled to establish Sonic's knowledge or willfulness, as is required under binding federal precedent.

## V.    <u>CONCLUSION</u>

For these reasons, the Court should dismiss Plaintiff's entire Complaint under

Rule 12(b)(6) with prejudice, along with granting Sonic all other just relief.

Dated: December 5, 2025                 Respectfully submitted,


By: /s/ *Spencer M. Stephens*

**BRADLEY ARANT BOULT CUMMINGS LLP**
Nancy H. Baughan (Georgia Bar No. 042575)
Spencer M. Stephens (Georgia Bar No. 920774)
nbaughan@bradley.com
smstephens@bradley.com
Promenade Tower, Suite 2100
1230 Peachtree Street NE
Atlanta, GA 30309
(404) 868-2100
(404) 868-2010 (facsimile)

**MANATT, PHELPS & PHILLIPS, LLP**
A. Paul Heeringa (*pro hac vice pending*)
151 N. Franklin Street, Suite 2600
Chicago, Illinois 60606
Tel: (312) 529-6300
Email: pheeringa@manatt.com

*Counsel for Defendant Sonic Industries Services,*
*LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned hereby certifies that this document has been prepared in accordance with Local Rule 5.1(C).

Dated: December 5, 2025                Respectfully submitted,

*/s/ Spencer M. Stephens*
Spencer M. Stephens

*Counsel for Defendant Sonic Industries Services, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

**JOE IRVIN**, on behalf of himself and
others similarly situated,

Plaintiff,

v.

**SONIC INDUSTRIES SERVICES, LLC**,

Defendant.

Case No. 3:25-cv-00242-LMM

Hon. Leigh Martin May

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document electronically on the Court's
CM/ECF docket on December 5, 2025, which served the same electronically upon all
counsel of record.

Dated: December 5, 2025

Respectfully submitted,

*/s/ Spencer M. Stephens*
Spencer M. Stephens

*Counsel for Defendant Sonic Industries
Services, LLC*