**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **JOE IRVIN**, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SONIC INDUSTRIES SERVICES, LLC**,<br><br>Defendant. | Case No. 3:25-cv-00242-LMM<br><br>Hon. Leigh Martin May |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Sonic Industries Services, LLC ("Sonic") hereby respectfully moves to dismiss all the claims asserted in Plaintiff Joe Irvin's first amended putative class action complaint (Dkt. 14, "FAC") <u>with prejudice</u>. In support, Sonic provides the following grounds:

## I.    INTRODUCTION

Like its faulty predecessor, Plaintiff's FAC alleges, in conclusory fashion and without sufficient requisite factual support, that Sonic violated 47 C.F.R. § 64.1200(c)(2)—a regulation promulgated under Section 227(c) of the Telephone Consumer Protection Act ("TCPA"). That regulation, on its face, prohibits "telephone calls" to certain numbers properly listed on the National Do-Not-Call ("DNC") Registry. Plaintiff's DNC claim here continues to rest squarely on alleged ***text***

*messages*, not phone calls, that he still vaguely suggests were either "delivered" by Sonic itself or that Sonic "caused to be delivered" by someone else (*i.e.*, a third party) to his cell phone. Dkt. 14, ¶¶ 22, 36. *Cf.* Dkt. 1, ¶¶ 31, 33 (Plaintiff's original complaint, alleging the subject texts were sent "by "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf").[1] As discussed below, however, Plaintiff's FAC still does not meet federal pleading standards or state a plausible TCPA claim, even after he amended, and thus it is ripe for dismissal.

Although it still lacks sufficient requisite supporting facts, the primary fatal defect with Plaintiff's FAC requiring its dismissal under Rule 12(b)(6) remains a legal one. Specifically, Plaintiff's lone claim here fails as a matter of law because Section 227(c) of the TCPA limits its private right of action to persons who "received more than one *telephone call*" in violation of the regulations prescribed under the statute. 47 U.S.C. § 227(c)(5) (emphasis added). Various federal courts, including in this Circuit, have thoroughly analyzed this issue and have held that, under the plain and unambiguous language of the statute, text messages are <u>not</u> "telephone calls" for purposes of Section 227(c) and are insufficient to support such a claim. *See, e.g., Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025)

---

[1] "The principle that a [federal] court may look to prior pleadings in determining the plausibility of an amended complaint" under Rule 12(b)(6) "is well-established." *Burgos v. Barrero*, 2017 WL 3575475, at *2 (C.D. Cal. June 30, 2017), *report and rec. approved*, 2017 WL 3575223 (C.D. Cal. Aug. 16, 2017)) (citation omitted).

(dismissing claim with prejudice under Rule 12(b)(6) "because a text message is not a 'telephone call'" under Section 227(c) and, therefore, the plaintiff failed to "state[] a plausible claim"); *El Sayed v. Naturopathica Holistic Health, Inc*., 2025 WL 2997759, at \*1-2 (M.D. Fla. Oct. 24, 2025) (ruling similarly and dismissing); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 898-902 (C.D. Ill. July 21, 2025) (same), *appeal filed sub nom.,* No. 25-2398 (7th Cir., August 12, 2025). As Plaintiff's only TCPA claim is based on text messages, it was doomed to fail from the start.

But even if, *arguendo*, text messages are covered by Section 227(c) of the TCPA, federal courts do not hold TCPA plaintiffs to lower pleading standards. Nor do they give TCPA plaintiffs armed with mere conclusions a free pass to discovery just because the TCPA was designed as a remedial statute.[2] Rather, it is well-established that, to satisfy federal pleading standards, all TCPA plaintiffs must first plead actual facts, without the benefit of any discovery, supporting a viable theory of TCPA liability (*i.e.,* direct or vicarious liability) against the defendant.[3] This rule

---

[2] Indeed, while it is a remedial statute originally designed to protect consumers from harassing telemarketers, the TCPA unwittingly spawned a cottage industry of class action litigation in this country, "has strayed far from its original [intended] purpose," and has "become the poster child for lawsuit abuse" by profit-seeking entrepreneurial plaintiffs and their counsel, ever since its enactment in 1991. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). Given this potential for abuse, federal courts across the country have dutifully fulfilled their gatekeeping role under the Federal Rules of ensuring such claims meet the plausibility threshold, and thus have strictly held TCPA plaintiffs to applicable federal pleading standards.

[3] *See, e.g., Tuso v Lennar Corp.,* 2024 WL 1239474, at \*4 (S.D. Fla. Mar. 22, 2024); *Carson v. Home Depot, Inc.,* 2022 WL 2954327, at \*5 (N.D. Ga. July 26, 2022).

requires Plaintiff here to plausibly allege, with sufficient non-conclusory supporting facts, that Sonic: (i) itself, and not a third party, took the steps to "physically" send the subject communications directly to Plaintiff's cell phone; or (ii) had an agency relationship with (*i.e.,* control over) any third parties who did so. At the same time, it is equally well-accepted that taking an equivocating "either/or" approach and concluding that either the defendant or a third party "delivered" the subject communications or "caused" them to be delivered is insufficient to plead such theories. *See, e.g., Melito v. Am. Eagle Outfitters, Inc.,* 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) (dismissing on these bases because "Plaintiffs' conclusory assertions that [defendant] sent or caused the text message to be sent is simply a legal conclusion devoid of further factual enhancement."). At its core, that is all Plaintiff's FAC alleges here, and Plaintiff's amendments did not cure this defect. Consequently, it should be dismissed under Rule 12(b)(6) with prejudice for this additional reason.

## II.    **RELEVANT ALLEGATIONS**

Despite being amended, Plaintiff's FAC remains based almost entirely on naked conclusions, and contains few (if any) plausible facts. In pertinent part, Plaintiff still vaguely alleges he received an unspecified number of "text messages in August, September and October 2025" presumably on his cell phone number—although he still does not refer to the subject number as such after amending, but avers that he "does not have a traditional landline." Dkt. 14, ¶¶ 15, 16, 21. Though Plaintiff now

concludes that "the messages were sent directly by Sonic" based solely on the alleged content—which, as discussed below, is not indicative of direct TCPA liability standing alone—Plaintiff still inconsistently alleges elsewhere in his FAC that Sonic either "delivered" the texts or "caused" them "to be delivered" by a third party. *Id.* ¶¶ 23-26, 36. In other words, like he did in his original pleading, Plaintiff still contends (or rather concludes) in his FAC that either Sonic and/or a third party texted him.

As discussed below, these allegations are insufficient to withstand dismissal.

## III.    **APPLICABLE LEGAL STANDARDS**

Rule 12(b)(6) authorizes dismissal for failure to state a claim for relief. A mere "formulaic recitation of the elements" fails to meet the requisite pleading standard under this Rule. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "bare assertion" and "conclusory allegation[s]" will also not suffice to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Instead, Plaintiff must "include factual allegations for each essential element" of his claim. *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). However, "[c]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal" and are not to be taken as true under Rule 12(b)(6). *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003); *see also Chaparro v. Carnival Corp., 693* F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are 'merely consistent with a defendant's liability' fall short of being facially plausible."); *Jaafar*

*Inv. Corp. v. Scottsdale Ins. Co.*, 2019 WL 8014368, at *1 (S.D. Fla. June 7, 2019) ("Defendant is correct that Plaintiff supports his allegations with insufficient specific facts about the nature and extent of [his] alleged loss.").

Additionally, courts in this Circuit and elsewhere have widely recognized that where "discrepancies exist between successive drafts of complaints," the court may consider this when ruling on a Rule 12(b)(6) motion and "has discretion to strike new or changed allegations as 'false and sham.'" *Pelfrey v. Mahaffy*, 2018 WL 3110794, at *5 (S.D. Fla. Feb. 2, 2018). *See also Rubinstein v. Keshet Inter Vivos Trust*, 2018 WL 8899230, at *5 (S.D. Fla. Oct. 17, 2018) ("[A] plaintiff may not directly contradict the facts set forth in an original complaint in a[ ] 'transparent attempt ... to amend his pleading[s] in order to avoid a dispositive defense' raised by a defendant and where the amended complaint directly contradicts the original complaint…. In these circumstances, a court may 'disregard the contradictory and manipulated allegations of an amended pleading.'") (citation omitted); *Forney v. Hair Club for Men Ltd., Inc*., 2017 WL 4685549, at *2 (C.D. Cal. June 26, 2017) (applying same "sham pleading" rule in TCPA case and dismissing with prejudice where allegations in the amended complaint were contradictory). In other words, "[w]here a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss [and] directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true" and

disregard the new allegations. *Pelfrey*, 2018 WL 3110794, at *5 (quoting *Wallace v. New York City Dep't of Corr.,* 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)).

## IV.    <u>ARGUMENT</u>

As discussed below, Plaintiff's FAC fails to state a plausible TCPA DNC claim, even after amendment. Because the primary defect in his claim is legal and uncurable, and he already had the chance to amend, the FAC should be dismissed with prejudice.

### A.    <u>The FAC Should be Dismissed with Prejudice Under Rule 12(b)(6) Section 227(c) of the TCPA Does Not Apply to Text Messages.</u>

The FAC fails as a matter of law because Section 227(c) of the TCPA (the sole basis for Plaintiff's claim) provides a private right of action only to "[a] person who has received more than one ***telephone call*** within any 12-month period … in violation of the regulations prescribed under this subsection …." 47 U.S.C. § 227(c)(5) (emphasis added). As courts in this Circuit and elsewhere have correctly observed, this section of the TCPA (which has existed since its enactment in 1991) "does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages." *Jones*, 792 F. Supp. 3d at 904; *see also Davis*, 2025 WL 2491195, at *2–3 (ruling similarly); *El Sayed,* 2025 WL 2997759, at *2 (same, citing *Davis* with approval). The implementing regulations for Section 227(c) likewise do not reference text messages. *See* 47 C.F.R. § 64.1200(c).

Moreover, as the Supreme Court recently reiterated, "[e]very statute's meaning is fixed at the *time of enactment*." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369,

400 (2024) (emphasis added). This means federal courts "must interpret what Congress wrote" when the statute was enacted and cannot rewrite the TCPA to update it for modern technology. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 405, 409 (2021).

As one court recently explained, "[t]ext messaging was not an available technology in 1991 [when the TCPA was enacted], and thus 'telephone call' would ***not*** have included text messages or SMS messages." *Jones*, 792 F. Supp. 3d at 899 (emphasis added); *see also Davis*, 2025 WL 2491195, at *1 (the court's conclusion that a text is not a "telephone call" is "supported by the ordinary public meaning at the time of the provision's enactment"); *El Sayed*, 2025 WL 2997759, at *2 ("In addition to the fact that in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication, the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction."). "Thus, under a plain reading, Section 227(c)(5) … does not regulate text messages" which did not exist in 1991. *Jones*, 792 F. Supp. 3d at 899. *See also Davis,* 2025 WL 2491195, at *1 ("Certainly, no ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.").

The well-reasoned *Davis* and *El Sayed* decisions above reflect a growing body of case law in the Eleventh Circuit finding that text messages are not covered by the

TCPA's DNC rules. This Court should rely on the sound logic and analysis of its sister courts here, which correctly concluded that texts are not covered by Section 227(c) of the TCPA. *See, e.g., Davis,* 2025 WL 2491195, at *1-4 (dismissing DNC claim, holding "Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter. Whatever its reasoning, it clearly limited the private right to those receiving 'telephone calls.'"); *El Sayed*, 2025 WL 2997759, at *2 (dismissing and finding that "[t]he omission of 'text message' from paragraph 227(c)(5) confirms that the provision applies only to a 'telephone call.'").

   *Davis* and *El Sayed* are also in accord with Eleventh Circuit precedent providing that courts interpreting federal statutes must "'presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.'" *Davis*, 2025 WL 2491195, at *4 (quoting *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025)); *see also El Sayed*, 2025 WL 2997759, at *2 ("'[W]hen Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous.'") (quoting *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025)). This further undermines any argument that text messages are "calls" under Section 227(c) of the TCPA. And it is axiomatic that "[i]f a statute's language is plain" and

unambiguous, like the TCPA's statutory text is, federal courts "'must enforce it according to its terms.'" *Gonzalez v. Amazon.com, Inc.,* 835 F.App'x 1011, 1011 (11th Cir. 2021) (quoting *King v. Burwell,* 576 U.S. 473, 135 S. Ct. 2480, 2489 (2015)).

Plaintiff may argue in response to this Motion that the term "telephone solicitation" is defined in 47 U.S.C. § 227(a)(4) to include "the initiation of a telephone call or message." But that definition does not alter the result. *First*, "Section 227(a)(4) does not refer to a '***text*** message'" and, as discussed above, "telephone call or message" could not have been interpreted in 1991 to include texts, which were not yet in existence. *Jones*, 792 F. Supp. 3d at 900 (emphasis added); *see also Davis*, 2025 WL 2491195, at *2 ("[H]owever Congress defines 'telephone solicitation'—and whatever Congress directed the FCC to do in terms of regulating certain 'telephone call[s] or message[s]'—the private right of action Congress created exists only for those who received multiple 'telephone calls.'" (citing 47 U.S.C. § 227(c)(5)). *Second*, as one court in this Circuit observed, "Congress's use of the phrase 'telephone call or message' in a neighboring provision…shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" *Davis*, 2025 WL 2491195, at *2.

In response, Plaintiff may refer to other regulations implemented by the FCC in the 2000's that mention text messages. However, the FCC's authority to implement regulations under Section 227(c) was expressly limited to "the establishment and operation of a single national database to compile a list of telephone numbers of

10

residential subscribers who object to receiving telephone solicitations" and in the **9 months** after December 20, 1991. 47 U.S.C. § 227(c). Those regulations were implemented in <u>1992</u>, as authorized, and also do not refer to text messages. 47 C.F.R. § 64.1200(c); *see also In the Matter of Rules & Reguls. Implementing the TCPA*, 7 FCC Rcd. 8752 (1992) (also devoid of any discussion of text messages). Thus, any DNC regulations enacted thereafter exceeded the FCC's rule making authority.

Further, while the FCC previously stated in a 2003 Order that "calls" do include "text messages" in **some** circumstances, that Order only addressed text messages in the context of the TCPA's automated calling provisions, which falls under a different provision, *i.e.*, Section 227<u>(b)</u>. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115-16 at ¶ 165, n.603-605 (2003); *see also Jones*, 792 F. Supp. 3d at 900 ("[O]n its face…, the 2003 Order explicitly references only Section 227(b)"). But even if it were relevant, the FCC's prior 2003 interpretation above is not entitled to deference today, under recent Supreme Court precedent. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2013 (2025) (holding "the Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct"); *see also Loper*, 603 U.S. at 401 (overruling *Chevron* deference, finding "*Chevron* gravely erred [ ] in concluding that the inquiry is fundamentally different just because an administrative interpretation

is in play"); *Davis*, 2025 WL 2491195, at *4 n.3 ("[E]ven if the FCC['s 2003] order were contrary to this court's conclusion, that would not preclude dismissal.").

This is true even though Section 227(c) of the TCPA affords certain rulemaking authority to the FCC. As the *Davis* court correctly observed: "*McLaughlin* … calls for 'appropriate ***respect***,' not 'appropriate deference.' [] And the concepts are different. One can provide 'appropriate respect' to an agency's view without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text. Thus, even assuming the FCC order clearly defined 'telephone calls' as that term is used in § 227(c)(5), 'appropriate respect' for that conclusion would not require a different outcome here." 2025 WL 2491195, at *2 (quoting *McLaughlin*, 606 U.S. at 168) (internal citation omitted, emphasis added).

In short, under binding federal precedent, all federal courts must "independently interpret" statutes like the TCPA under ordinary principles of statutory interpretation—even where the statute delegates some discretionary authority to a government agency—and therefore must interpret the statute as written by Congress as "if no agency were involved." *Loper*, 603 U.S. at 401.

Applying *McLaughlin*, *Loper*, and the other applicable authority above to the plain and unambiguous language of the statutory text at issue leads to one result—the TCPA's DNC rules simply do not extend to certain forms of communication, like text messages, that did not exist when the TCPA was enacted in 1991. *See Jones*, 792 F.

Supp. 3d at 899 (citing *Loper* and https://time.com/3612277/text-message-history-future/ ("The world's very first text message, sent Dec. 3, 1992….")).

Lastly, Sonic anticipates that, in response to this Motion, Plaintiff may cite a handful decisions where district courts appeared to reach different conclusions than the courts did in the well-reasoned *Davis*, *El Sayed*, and *Jones* cases discussed above. If so, as Sonic will show in greater detail in its reply brief, however, all such cases are inapplicable. That is because, *inter alia,* they either: (i) pre-date or did not apply *McLaughlin* and *Loper*; (ii) did not perform any statutory construction analysis or did not perform one properly in accordance with binding federal precedent; (iii) relied heavily on outdated authority, on binding Ninth Circuit case law (which is not binding here) and/or on FCC authority (which is not entitled to any deference today after *McLaughlin* and *Loper* in any event), all discussing whether texts are covered by the automated call provisions of Section 227(b), which again is not at issue in this case; (iv) applied modern definitions of the term "call" developed after the TCPA was enacted, which is not permissible under *Facebook* and *Loper*; (v) involved arguments that Sonic is not making in this case (e.g., if cell phones are "residential"); and/or (vi) the parties simply did not raise the issue and assumed texts were covered. In short, none of the easily-distinguishable decisions Plaintiff may cite should be applied here.

In sum, although Plaintiff may believe that there are compelling reasons to expand Section 227(c) of the TCPA to reach the realities of today's technologies, ***only***

*Congress* can do so. "It is not for [any] court to legislate by reading into the TCPA something that is not there" and courts must apply the statute as written. *Jones*, 792 F. Supp. 3d at 901; *see also Davis*, 2025 WL 2491195, at *3 ("Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter. Whatever its reasoning, it clearly limited the private right to those receiving 'telephone calls.'"); *id*. ("[T]he court's role is not to look beyond clear language to ascertain Congress's purpose. Instead, the best evidence of that purpose is the language of the statute itself.")). As text messages plainly are not covered by Section 227(c) of the TCPA, and as this legal defect is incurable, Plaintiff's entire FAC should be dismissed <u>with prejudice</u>. *See, e.g., Davis, supra*.[4]

**B.    <u>The FAC Should Also Be Dismissed with Prejudice Under Rule 12(b)(6) Because It Fails to Sufficiently Plead TCPA Liability.</u>**

The FAC should also be dismissed because Plaintiff fails to plead a viable TCPA liability theory. There are "two potential theories of liability under the TCPA" that must be adequately pled in all cases to avoid dismissal under Rule 12(b)(6): "(1)

---

[4] Dismissal with prejudice is also appropriate where (as here) a plaintiff already has had a chance to amend but failed to cure the fatal pleading defects in her original complaint when amending. *See, e.g., Rance v. Rocksolid Granit USA, Inc.,* 2010 WL 11601453, at *6 (S.D. Fla. Sept. 2, 2010); *Carvel v. Godley,* 404 F.App'x 359, 361 (11th Cir. 2010). Dismissal with prejudice is also proper here because a "more carefully drafted complaint would not state a claim for relief" and, thus, amendment would be futile. *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1213 (11th Cir. 2013).

direct liability; and (2) vicarious liability." *Rogers v. Postmates Inc*., 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)). This rule means that, "[f]or a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call"—and there must be ***facts*** supporting such allegations to meet *Iqbal*/*Twombly. Pascal v. Agentra, LLC,* 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)).

Courts throughout the Eleventh Circuit have firmly adopted this rule. *See, e.g., Tuso,* 2024 WL 1239474, at *2-4; *Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *1-4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part,* 2024 WL 2794108 (May 31, 2024); *Carson,* 2022 WL 2954327, at *5 (each collecting cases and dismissing on these grounds under Rule 12(b)(6)). Moreover, failure to plausibly allege either liability theory warrants dismissal of <u>any</u> TCPA claim in its <u>entirety</u>, regardless of whether there were facts pled supporting other essential elements of the claim. *See, e.g., Tuso* and *Belleville, supra* (dismissing entire complaint on these bases); *see also Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject] text messages—the Court does not reach Defendants' arguments

regarding whether Plaintiff adequately plead the other elements" of the asserted claims.); *Hirsch v. Lyndon S. Ins. Co.,* 2019 WL 5110622, at *6 (M.D. Fla. June 7, 2019), *report and rec. adopted sub nom.,* 2019 WL 8370863 (Aug. 6, 2019), *aff'd*, 805 F.App'x 987 (11th Cir. 2020) (dismissing where plaintiff was "attempting to impose liability on Defendants for countless calls made throughout the United States … without [adequately] alleging who made the calls"). As shown below, Plaintiff in this case once again failed to properly allege either direct or vicarious TCPA liability.

As to the former theory, federal district courts have uniformly recognized that direct TCPA liability applies only to persons or entities that "initiate" or "make" telemarketing calls, which means to "physically place" a call or send a text directly to the plaintiff. *See, e.g., Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (discussing differences between direct and vicarious TCPA liability and the standards for pleading same under *Iqbal*/*Twombly*, and dismissing where the allegations did not "lead to the inference that [defendant] sent or was directly involved in [physically] sending the text messages at issue") (citing *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)).[5] *Accord*

---

[5] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims like Plaintiff's (including those cited above and below, among many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the calls at issue. *See also Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020). This represents a clear national majority rule.

*Tuso* and *Belleville*, *supra*. Conversely, direct TCPA liability "generally does ***not*** include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 FCC Rcd. at 6583 (emphasis added).

In other words, for direct TCPA liability to attach here, Plaintiff must plausibly allege that Sonic ***itself***, and not a third party, ***physically*** sent ("made" or "initiated") ***each*** text message at issue ***directly*** to his phone number. *See, e.g., Carson,* 2022 WL 2954327, at *5 (dismissing with prejudice where plaintiff did "not plausibly allege that Home Depot sent any text messages" to her); *Belleville,* 2024 WL 2342337, at *4 (recommending and approving dismissal where the plaintiff did not sufficiently allege the defendant itself physically initiated each of the subject communications directly to the plaintiff, even though one caller said they were calling "from" the defendant and provided the defendant's website); *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1–2 (N.D. Ill. Sept. 22, 2021) (dismissing TCPA claim where allegations did not "allow the Court to reasonably infer that defendant is liable for each call" and holding "[a]t the very minimum, plaintiff must allege in her complaint that defendant made each call that she seeks to hold it liable for."); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing where plaintiffs did not plausibly allege "[d]efendant itself" called); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing on this basis, holding TCPA

plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call").

Further, federal district courts have widely recognized that "[m]erely alleging that [a defendant or an agent] 'made' or 'initiated' [a] call"—like Plaintiff's FAC does here, at its core—"is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). Under *Iqbal/Twombly,* "simply asserting a purported fact" in such a fashion and concluding the defendant "directly" called or texted (as Plaintiff alleges) "does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing TCPA case on this basis).

Countless district courts in and beyond the Eleventh Circuit have ruled similarly, and thus have consistently dismissed conclusory TCPA claims like Plaintiff's on this basis. *See, e.g., Belleville,* 2024 WL 2342337, at *4 (recommending and approving dismissal where plaintiff alleged "in conclusory fashion that [d]efendant was directly involved in making" the subject calls without sufficient factual support showing that the defendant itself physically placed the subject calls); *Tuso,* 2024 WL 1239474, at *4 (dismissing where the plaintiff's "conclusory statement" as to direct TCPA liability was insufficient); *Matthews v. Senior Life Ins. Co.*, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (dismissing TCPA claim

where complaint contained only conclusory allegations that the calls came "from" the defendant); *Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (dismissing on this basis, holding "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal"); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing where the plaintiffs merely concluded one defendant "physically" placed the subject phone calls, noting that the "[p]laintiffs have not pleaded any ***facts*** supporting their inference that [defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)).

A myriad of courts have also recognized even a call or text allegedly offering the defendant's products, identifying the defendant by name, including hyperlinks to the defendant's website, and/or seemingly originating from the defendant in some fashion ***does not***, standing alone, allow for a plausible inference that the defendant itself physically made or initiated any call or text for direct liability purposes. *See*, *e.g.*, *Meeks*, 2018 WL 1524067, at *1–5 (no direct liability, even though text identified the defendant by name and contained a link to its website); *Belleville*, 2024 WL 2342337, at *1-4 (dismissing on this basis, even though one caller said they were calling "from" the defendant and provided its website); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where

there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"). Together, the foregoing well-reasoned authorities (among many others) show that the alleged content of the subject communications alone is <u>not</u> dispositive or indicative of direct TCPA liability.

This accepted approach to evaluating the facial sufficiency of direct TCPA liability claims under Rule 12(b)(6) is logical, reflects a proper application of federal pleadings standards in the TCPA context, and recognizes companies often hire third parties to handle their outbound communications. *See, e.g., Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) ("[A] defendant 'generally does not initiate calls" within the meaning of the TCPA, placed by third-party telemarketers,' even if the third party had acted on its behalf."). For example, a company could "cause" a text to be physically "delivered" by a third party vendor, as Plaintiff avers (*see* Dkt. 14, ¶ 36). Such a communication would naturally identify the defendant by name or sell its products—or, as Plaintiff alleges, "display" the defendant's "branding" (*id.*, ¶ 24)—which is why the vendor was hired in the first place. Bu that text would not have been physically sent by the ***defendant itself directly***, which is what matters and must be pled on this point. Logically, and as a matter of law, an ***indirect*** connection to a text sent by a third party is ***not*** "direct" TCPA liability. *See, e.g., Hossfeld v. Am. Fin. Sec. Life Ins. Co.,* 544 F. Supp. 3d 1323, 1331–32 (S.D. Fla. 2021) (TCPA defendants "cannot be directly liable for calls made by third parties").

In short, it is well-accepted nationally that a communication "merely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability, and that more is needed to plausibly allege such a theory and avoid dismissal under Rule 12(b)(6). *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) (dismissing on this basis).

Moreover, while federal courts do not expect TCPA plaintiffs to know every detail to support liability at the pleading stage, they have consistently held that plaintiffs must adequately plead plausible facts supporting direct (or, alternatively, vicarious) TCPA liability without the benefit of discovery to avoid a dismissal under Rule 12(b)(6). *See*, *e.g.*, *Hurley v. Messer,* 2018 WL 4854082, at *4 (S.D. W.Va. Oct. 4, 2018) (dismissing on this basis, noting "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"). Put differently, "[a]s a party to these calls [or, rather, alleged texts], Plaintiff should be able [and indeed is required] to provide greater detail" without any discovery to avoid a dismissal here. *Matthews,* 2025 WL 1181789, at *3 (quoting *Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020)).

Applying these firmly-rooted legal principles here also dooms Plaintiff's entire FAC. Indeed, even after amending, Plaintiff still pleads no facts suggesting Sonic physically texted him, such that it could be held directly liable under the TCPA here. For example, he does not allege, *inter alia,* that (i) his Caller ID identified "Sonic" as

the sender of each text; (ii) he ever communicated with any Sonic *employee* through these texts; or (iii) Sonic owns or uses the phone number used to send them. Such facts ***might*** have supported a direct TCPA liability theory here, if properly pled, as other courts have found. *See, e.g., Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *2-3 (E.D. Va. Apr. 15, 2019); *Rogers v. Assurance IQ*, 2023 WL 2646468, at *5; *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4-6 (D.N.J. Mar. 30, 2023); *Smith v. Direct Bldg. Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Bank v. Vivint Solar, Inc*., 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (each dismissing on this basis where the complaint lacked such requisite contextual details). Their omission here is fatal.

Further, as noted above, Plaintiff still avers in his FAC that Sonic "delivered" the texts or "caused" them "to be delivered" by a third party, and now inconsistently concludes based solely on the alleged content that the "messages were sent directly by Sonic." Dkt. 14, ¶¶ 23-26, 36. Even if this Court treats these few ill-pled "sham" allegations as true (and it should not under *Iqbal*/*Twombly* and their progeny), federal courts throughout the country have recognized that the alleged content of a call or text message, even if a defendant's name is mentioned or its products are sold—which is all Plaintiff offers here, even after amending—is not dispositive of, and thus insufficient to plead, direct TCPA liability alone. *See* discussion at pp. 17-21, *supra*. In fact, federal courts have that found such conclusory and equivocating allegations

22

are "woefully insufficient to state a claim of *any sort*." *Maldonado-Rodriguez v. Citibank, N.A.*, 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added).

This is particularly true when it comes to TCPA claims, as federal courts nationwide have squarely rejected such a flawed "either/or" approach to pleading TCPA liability theories. *See, e.g., Melito,* 2015 WL 7736547, at *4 (dismissing similar complaint, holding "Plaintiffs' conclusory assertions that [the defendant] *sent or caused the text message to be sent* is simply a legal conclusion devoid of further factual enhancement.") (emphasis added); *Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing on this basis where plaintiff concluded the caller's "numbers belonged to [defendant] Nano or Nano's agent," without supporting facts suggesting the defendant physically placed each call); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plead any TCPA liability liability). This Court should rule similarly.

That Plaintiff now concludes the "messages were sent directly by Sonic" is of no moment here, as that is completely contradictory to his original Complaint, where he concluded the subject texts were sent by "***Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf***." Dkt. 1, ¶¶ 31, 33 (emphasis added). Again, it is well-settled in this Circuit that "a plaintiff may not directly contradict the facts set forth in an original complaint in a[ ] 'transparent

attempt ... to amend his pleading[s] in order to avoid a dispositive defense' raised by a defendant and where the amended complaint directly contradicts the original complaint.... In these circumstances, a court may 'disregard the contradictory and manipulated allegations of an amended pleading." *Rubinstein,* 2018 WL 8899230, at *5. This Court should rule similarly, disregard Plaintiff's "sham" allegations here, and dismiss his FAC for failing to plausibly allege a direct TCPA liability theory.

Lastly, the well-accepted touchstone of a common law agency relationship in the TCPA context, as is required for vicarious TCPA liability, mandates plausible factual allegations suggesting that the defendant had specific "control" over the literal "manner and means" of any third party caller's telemarketing campaign, as opposed to control over an agent generally. *See, e.g., Meeks*, 2018 WL 1524067, at *6 (dismissing where complaint lacked specific facts the defendant controlled "whether, when, and to whom to send the text messages, along with their content"); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (dismissing where the plaintiff omitted facts supporting an inference of such specific "control"); *Rogers*, 2023 WL 2646468, at *6 (same); *Nelums, LLC*, 2023 WL 5607594, at *8 (same); *Bank*, 2019 WL 2280731, at *2 (dismissing where plaintiff did not allege defendant "had the power to give 'interim instructions'" to the caller).

Moreover, a plaintiff obviously cannot conclude their way into a viable vicarious TCPA liability theory and expect to withstand scrutiny under Rule 12(b)(6).

*See, e.g., Abramson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) (dismissing where "allegations of vicarious [TCPA] liability [we]re conclusory in nature"). Here, beyond his FAC using legal buzzwords suggestive of third party involvement as noted above, which are conclusions entitled to any presumption of truth, Plaintiff alleges nothing suggesting Sonic had "control" over the subject texting campaign,[6] and thus has not pled a plausible vicarious liability theory.

In sum, direct and vicarious TCPA liability is not a minor issue. Rather, as the many on-point authorities above dismissing similarly ill-pled TCPA complaints on these grounds show, this is a critical legal distinction that federal courts have found must be properly pled before subjecting defendants to TCPA liability and potential statutory damages—which can be costly and potentially ruinous, especially in class actions. Plaintiff's continued use of a flawed "either/or" approach to pleading TCPA liability here has been rejected time and time again by countless federal courts as improper. So should this Court. Consequently, the entire FAC should also be dismissed with prejudice under Rule 12(b)(6) on direct and vicarious liability grounds.

---

[6] That Sonic's name, branding, or its products were allegedly mentioned in the texts alone does not support an inference of such control, either. *See, e.g., Hale v. Teledoc Health, Inc.*, 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) (dismissing and holding: "[T]he inclusion of [defendant's] services in [the telemarketer's] insurance bundle, alone, is insufficient to permit even a circumstantial inference that [the telemarketer] called plaintiffs at [the defendant's direction or subject to [its] control").

Dated: December 19, 2025          Respectfully submitted,

By: /s/ *Spencer M. Stephens*

**BRADLEY ARANT BOULT CUMMINGS LLP**
Nancy H. Baughan (Georgia Bar No. 042575)
Spencer M. Stephens (Georgia Bar No. 920774)
nbaughan@bradley.com
smstephens@bradley.com
Promenade Tower, Suite 2100
1230 Peachtree Street NE
Atlanta, GA 30309
(404) 868-2100

**MANATT, PHELPS & PHILLIPS, LLP**
A. Paul Heeringa (admitted *pro hac vice*)
151 N. Franklin Street, Suite 2600
Chicago, Illinois 60606
Tel: (312) 529-6300
Email: pheeringa@manatt.com

*Counsel for Sonic Industries Services, LLC*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned hereby certifies that this document has been prepared in accordance with Local Rule 5.1(C).

Dated: December 19, 2025    Respectfully submitted,

           */s/ Spencer M. Stephens*
           Spencer M. Stephens

           *Counsel for Sonic Industries Services, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket on December 19, 2025, which served the same electronically upon all counsel of record.

Dated: December 19, 2025    Respectfully submitted,

           */s/ Spencer M. Stephens*
           Spencer M. Stephens

           *Counsel for Sonic Industries Services, LLC*