# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| JOE IRVIN, on behalf of himself and others similarly situated, | : | Case No. 3:25-cv-00242-LMM |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SONIC INDUSTRIES SERVICES, LLC | : | |
| | : | |
| Defendant. | : | |
| | / | |

## PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS

**Introduction**

Sonic Industries Services, LLC ("Sonic") moves to dismiss, arguing the Do Not Call rules don't cover texts and that Plaintiff hasn't plausibly linked Sonic. The motion should be denied.

The Telephone Consumer Protection Act's provisions authorizing a nationwide Do Not Call List, 47 U.S.C. § 227(c), empower the FCC to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," *id.* § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list. *Id.* § 227(c)(3)(F). For decades, the FCC has consistently made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. §§ 64.1200(c)(2), (e); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003). The FCC has also determined that those provisions authorize it to prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 F.C.C. Rcd. at 14115; *In re Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 (2023).

In the decades since FCC established the Do Not Call List and began enforcing those protections, over 200 million phone subscribers have come to rely on them. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203–204 & n.5

(S.D.N.Y. 2024). Plaintiff Joe Irvin is one of them. So, when Defendant Sonic Industries Services, LLC sent him telemarketing texts in willful violation of the FCC's rules, he brought this lawsuit to vindicate those rights and put a stop to Sonic's unwelcome and intrusive marketing practices.

Sonic has now filed a Motion to Dismiss, and it's one that makes a big ask of this court. The Supreme Court recently held that courts are not automatically bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025). So, Sonic therefore asks this court to reject the FCC's longstanding interpretations and hold that the Do Not Call List protects only voice calls, upending protections for potentially hundreds of millions of Americans who receive unwanted and non-consensual text messages.

This court should decline that request. A fresh read of the statutory text confirms that cell phone subscribers are eligible for the Do Not Call List, and that listing their number protects them from intrusive text messages, not just voice calls. Sonic asks this Court to substitute its judgment for Congress's and the FCC's largely because in 1991 text messages didn't exist yet. But that is not how statutory interpretation works, and it's contrary to the plain meaning of the terms Congress used. And even if the statute itself weren't clear on this, later enactments and multiple express delegations of discretion to the FCC show that Congress would

2

have intended the FCC's consistent and well-reasoned judgment to win out. Also, the Plaintiff plainly alleges that the Defendant sent the texts at issue.

Plaintiff's allegations also easily satisfy Rule 12(b)(6). He alleges that Sonic delivered multiple unsolicited text messages to his personal, residential number despite its registration on the National Do Not Call Registry and despite his lack of consent or any prior relationship with Sonic. Those allegations, taken as true, state a plausible claim under §227(c).

## Background

Plaintiff is the regular and sole user of a cellular telephone number ending in XXXX, which he uses exclusively as a personal residential number and not for business purposes. ECF No. 14, ¶¶ 15–20. He does not maintain a traditional landline. ECF No. 14, ¶ 16. In February 2025, Plaintiff registered his number on the National Do-Not-Call Registry. ECF No. 14, ¶ 21. Plaintiff did not provide Sonic prior express invitation or permission to send telemarketing text messages to that number, nor did he provide prior express written consent. ECF No. 14, ¶ 22.

Despite this, Plaintiff received telemarketing text messages in August, September, and October 2025. ECF No. 14, ¶ 23. Plaintiff alleges the messages were sent directly by Sonic and included Sonic's name, Sonic branding, and Sonic promotional offers, communicating that Sonic was the advertiser and sender. ECF No. 14, ¶¶ 24–25. The texts included hyperlinks directing recipients to Sonic's

3

website and domain and displayed Sonic's promotions, locations, contact methods, and offer-redemption features. ECF No. 14, ¶¶ 25–26. Plaintiff further alleges the texts used uniform campaign formatting, repeated promotional language, and consistent branding and calls-to-action, reflecting that the messages were part of a centralized Sonic marketing initiative. ECF No. 14, ¶ 27.

Plaintiff alleges Sonic's conduct was knowing or willful, including because Sonic has previously been sued under the TCPA yet continued to deploy telemarketing text campaigns without ensuring DNC compliance. ECF No. 14, ¶¶ 31–35.

## Argument

### I.    Text Messages Are "Calls" Under § 227(c)(5), As Nearly Every Court to Consider the Question Has Held.

Defendant contends that a text message is not a "call" under the TCPA and that the FCC overstepped when it interpreted a "call" to include text messages. The Supreme Court, every Circuit Cour, and the majority of district courts, even after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 145 S. Ct. 2006 (2025), disagree with Defendant's position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".); *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, at n.2 (11th Cir. 2025) ("We use the terms 'robocalls' and 'robotexts' as shorthand for calls and texts made 'using any automatic telephone dialing system or an artificial or prerecorded

voice'—*i.e.*, the calls and texts that the TCPA regulates….We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages."); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Breda v. Cellco Partnership*, 934 F.3d 1, n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact.").

"The Supreme Court ratified the FCC's interpretation that a text message was a call for the purposes of the TCPA in *Campbell-Ewald v. Gomez* [.]" *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021). Indeed, "it is unlikely that the Court would stay silent about any serious concerns that robotexts were an invalid ground for TCPA recovery in a case construing the same statute." *Id*. at 199. "Furthermore, in the most recent term Justice Kavanaugh's plurality opinion in *Barr* cited the FCC's regulations applying the TCPA to text messages as the current applicable legal standard." *Id*.

"In addition to the Supreme Court and the FCC, *Congress* has also made clear the TCPA's applicability to text messages." *Williams v. Myler Disab., LLC*, No.

3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) (emphasis added). Specifically, when Congress amended the TCPA in 2019 with the TRACED Act, it adopted the FCC's interpretation, instructing the FCC to prescribe regulations related to "a call made or *a text message* sent in violation of [227(b).]" 47 § 227(i)(1)(A) (emphasis supplied).

As further explained below, the Defendant's argument should be rejected.

## II.    The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages.

The text, structure, and purpose of § 227(c) foreclose Sonic's voice-only theory. Sonic contends that a single use of the word "call" in section 227(c)(5)'s private right of action means that the Do Not Call List rules cannot apply to text messages. That's incorrect.

### a.    The plain meaning of the word "call" includes text messages.

As the Eleventh Circuit has explained with respect to statutory interpretation:

> Our job is to interpret a statute based on the ordinary meaning of its text at the time that the statute was enacted. *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070, 201 L. Ed. 2d 490 (2018). Dictionary definitions from the period of enactment often illuminate [**12] the ordinary usage of a statutory term. *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759, 201 L. Ed. 2d 102 (2018).

*Myrick v. City of Hoover*, 69 F.4th 1309, 1316 (11th Cir. 2023). Here, the "ordinary, contemporary, common meaning" of the word "call" in this

context is "'to communicate with or try to get into communication with a person by a telephone.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir 2009) (quoting *Webster's Third New International Dictionary* (2002)).[1]

Other Courts have held that this definition—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress intended in 1991, when the TCPA was enacted. *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013). And texting is, of course, a means of communicating with someone by telephone. So, the established definition of "telephone call" readily encompasses texts. *See, e.g.*, *Wilson v. Medvidi*, 2025 WL 2856295, at *2 (N.D. Cal. 2025); *Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2 (N.D. Ill. 2025).

The established meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. Absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85

---

[1] This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed. 1989) ("a summons or communication by telephone").

(2017). The word "call" is used extensively in the provisions of the statute that prohibit automatic dialing technology and robocalls, which were also part of the statute when it was first enacted in 1991. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call.[2] So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010).

Courts have therefore "routinely found that the phrase 'call' in subsection (b) … includes text messages." *Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513, at *7 n.6 (M.D.N.C. 2024); *see, e.g.*, *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). And that "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at *2.

---

[2] *See, e.g.*, Paging Network, Inc., Annual Report, at 8 (1991), https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number").

Most recently, *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, *14 (S.D.N.Y. Dec. 5, 2025) held that § 227(c) applies to text messages because "the ordinary public meaning of 'telephone call' when the TCPA was enacted in 1991 was … a communication made by telephone," and "[t]ext messages fit easily within that broad definition." This Court should hold the same.

### b. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages.

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List.  47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). That definition plainly encompasses modern text messages. More generally, the definition of "telephone solicitation" focuses not on the form of a communication but whether it is made "for the purpose of encouraging" a commercial transaction. *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025).

The purpose and structure of the Do Not Call List provisions supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not

distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274, at *4 (D. Or. July 21, 2025). To be sure, as Sonic emphasizes, Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But as just explained, the statute *does* explicitly cover any "telephone solicitation," which is expressly defined to include any "call *or message*." 47 U.S.C. § 227(a)(4). It is the meaning of those terms that governs, not the specific facts or technology that Congress would have had in mind in 1991. *See Oncale*, 523 U.S. at 79; *Nat'l Cable & Telecom. Ass'n*, 567 F.3d at 665. "The fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024) (quoting *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 212, (1998)).

### c. Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated.

Section 227(c)(5) cannot be read in isolation to nullify the very regulatory regime Congress created. Congress directed the FCC to establish a national list of residential subscribers who object to "telephone solicitations" and to prohibit

telemarketers from "making or transmitting" such solicitations to numbers on that list. 47 U.S.C. § 227(c)(3)(F). It then created a private right of action for any person who receives more than one "telephone call" in violation of those regulations. 47 U.S.C. § 227(c)(5). The phrase "telephone call" in § 227(c)(5) therefore operates as the enforcement mechanism for the FCC's Do-Not-Call regulations—not as a covert limitation that strips those regulations of meaning whenever a solicitation is transmitted by text rather than voice. Reading "telephone call" to exclude text messages would create the anomalous result that the FCC may prohibit text solicitations under § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2), (e), yet consumers would have no statutory remedy to enforce those prohibitions. That interpretation would defeat Congress's express goal of protecting residential subscribers' privacy rights and would turn § 227(c)(5) into a dead letter as to the very type of telemarketing most prevalent today. Statutes are not construed to produce such self-defeating results, particularly where Congress defined "telephone solicitation" to include a "telephone call or message" transmitted for commercial purposes. 47 U.S.C. § 227(a)(4).

Section 227(c)(5) grants a right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward

result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

It is well established that the word "call" in the TCPA includes text messages. That meaning of "call" is especially clear in neighboring provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same breadth as "telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a). So § 227(c)(1)(D)'s reference to "calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, as explained above, broadly encompasses a "telephone call or message" and thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4); *see supra*.[3]

Sonic heavily relies on *Jones v. Blackstone Medical Services, LLC*, No.

---

[3] Because § 227(c)(1)(D) confirms that the variation between Congress's use of a "call or message" in § 227(a)(4)'s capacious definition and its use of "call" in § 227(c)(5) is immaterial, the one district court that recently relied on this distinction to adopt a restrictive interpretation is unpersuasive. *Contra Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025).

1:24-cv-1074, 2025 WL 2042764 (C.D. Ill. July 21, 2025), but *Jones* is

unpersuasive. There, the court held that a text message could not be a "call" for

purposes of § 227(c)(5)'s private right of action because "[t]ext messaging was not

an available technology in 1991," and "in today's American parlance, 'telephone

call' means something entirely different from 'text message.'" *Id.* at *4.

But that gets statutory interpretation wrong in two important ways. First, as

the Supreme Court has warned, "modern intuition" doesn't always match

"evidence of a term's meaning at the time of [a statute]'s enactment." *New Prime*

*Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). *Jones* and other cases go astray when

they reflexively apply present-day intuitions about how text messages are

discussed to language from 1991, before the first text message was ever sent.[4] And

second, as explained above, it's irrelevant that Congress didn't have text messages

specifically in mind in 1991. *See supra* (citing cases). "The mere fact that Congress

did not envision the ubiquitousness of text messaging in 1991 does not mean the

FCC's conclusion lacks support." *Wilson,* 2025 WL 2029274, at *4.

*Jones* also disregarded the FCC's longstanding interpretation of "call" to

include text messages because the FCC, until 2023, had only articulated that

---

[4] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at *1 (relying on how "a normal person
refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call"
to refer to a message sent to a "paging service," the most analogous type of text-
message-like communication in 1991).

interpretation in the context of the statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's unsurprising. The Do Not Call List provisions are built around the defined term "telephone solicitation," so the standalone word "call" is much more extensively used in § 227(b)'s autodialer and robocall prohibitions, or in associated definitional provisions. That's why the FCC first determined that "call" includes text messages in the § 227(b) context, and only more recently memorialized in a formal regulation that "call" has the same meaning in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); *In re: Targeting and Eliminating Unlawful Text Messages*, 88 Fed. Reg. 20800, 20802 ¶ 6 (2023); *In re: Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 ¶ 26 (2023). But that doesn't mean there's any daylight between § 227(b) and § 227(c) on this particular question, and neither *Jones* nor Sonic identifies any. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think otherwise, "a word or phrase is presumed to bear the same meaning throughout a text"). In fact, reading the word "call" differently in § 227(c)(5) than in neighboring provisions would make no sense. *See, e.g.*, 38 F.C.C. Rcd. at 12257 (rejecting that "anomalous" interpretation). If Congress intended to cabin § 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have conveyed that by using a term that elsewhere in the statute *includes* them.

> **d. Even if the statute left room to doubt that a text message can be a violation (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day.**

Since 2003, the FCC held that text messages constitute calls within the meaning of the TCPA. *In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls") (the "2003 Order").

To be sure, mere ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). But courts still defer when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" *Id*. at 395. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within those outer bounds. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

This case falls at the intersection of *two* such express delegations. Mainly, § 227(c) itself is an express delegation of rulemaking discretion to the FCC: Congress tasked the FCC with evaluating alternative approaches based on (among other things) their "effectiveness in protecting … privacy rights" and their "other

advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). It then told the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphases added). That language grants discretionary authority to "fill up the details," accompanied by "flexibility" to determine what rules will best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395.  Congress in 1993 asked the FCC to decide whether cell phone companies are "common carriers" whose subscribers have rights under the TCPA, and the FCC did. *Compare* 47 U.S.C. § 332(a)(1)(A), *with* 47 U.S.C. § 227(c)(3). That expressly delegated the FCC "authority to give meaning to a particular statutory term." *Loper Bright*, 603 U.S. at 395. If Congress didn't speak on this issue, then it clearly looked to the FCC's expert judgment to supply an answer. *See U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016) (express delegation was evidence that Congress expected telecommunications technology to evolve).

It follows that the way to honor Congress's intent here is to "respect [that] delegation" and affirm the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395. Recognizing as much, courts have continued to defer to the FCC's well-reasoned decision to allow registration of cell phone numbers, even after *Loper Bright* and *McLaughlin*.  *See, e.g.*, *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025);

*Wilson*, 2025 WL 1784815, at *5; *Lirones*, 2024 WL 4198134, at *7; *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). This court should do the same.

### e. The FCC's Text-Message Clarification Is Reasonable Under the APA

When Congress grants an agency discretion to "fill up the details" of a statutory scheme—as § 227(c) does—the proper standard for reviewing that agency's rule is the APA's "arbitrary and capricious" test. Under that framework, the court asks not whether it would make the same policy choice, but whether the agency's decision is reasonable, consistent with statute, and reasonably explained. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 145 S. Ct. 1497, 1511 (2025) (courts ask whether the agency acted "reasonably and reasonably explained" its decision) (citing *Loper Bright*, 603 U.S. 369, 391–92 (2024)); *see also Zimmer Radio of Mid-Missouri, Inc. v. FCC*, 145 F.4th 828, 835–36 (8th Cir. 2025).

That standard is fully satisfied here. Congress explicitly directed the FCC in § 227(c)(1) to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights" and to adopt regulations it determines are "most effective and efficient." 47 U.S.C. § 227(c)(1)(A), (E). In 2023, the FCC exercised that authority by codifying that the Do Not Call rules cover text message solicitations to wireless numbers. 47 C.F.R. § 64.1200(e); 38

FCC Rcd. 12,247, 12,256–57 ¶¶ 26–27. The FCC provided a clear rationale: text messaging is a dominant communication medium; unwanted texts are immediate and intrusive; ignoring them is harder than ignoring calls; and excluding texts would create a loophole that undermines DNC enforcement. Id. ¶ 1, ¶ 26. That explanation easily draws a rational connection between the facts and the statutory purpose. *Balt. Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 105 (1983). The Commission considered the relevant factors and furnished a reasoned justification for covering texts.

Congress's subsequent action reinforces the reasonableness of the FCC's approach. Through the TRACED Act and other legislative updates, Congress has endorsed maintaining TCPA's consumer-protective architecture while codifying that texting falls within its ambit. See *Williams v. Myler Disability, LLC*, 2020 U.S. Dist. LEXIS 211914, at *n.2 (W.D.N.C. Nov. 12, 2020) (recognizing that Congress continued to treat texts as encompassed by the TCPA). That consistency undermines any claim that the FCC exceeded its delegated authority.

Even courts that have opted not to follow the FCC's rule have conceded that treating texts as "calls" is defensible. In *Jones v. Blackstone Med. Servs., LLC*, the court described Plaintiffs' view that texts may be calls as "eminently reasonable," 2025 U.S. Dist. LEXIS 138371, at *14 (C.D. Ill. July 21, 2025). That admission confirms the FCC's reasoning falls within the permissible range of policy

judgment. Under *Zimmer Radio*, a court reviewing such a rule cannot substitute its own preference when the agency has articulated a plausible rationale. 145 F.4th at 835–36. Defendant cannot show any defect in the decision. The FCC did not rely on irrelevant factors, ignore salient issues, contradict the administrative record, or adopt an implausible rationale. *Zimmer Radio*, 145 F.4th at 835. Rather, the rule is grounded directly in the record's findings of consumer harm, risk to privacy, and the need to harmonize enforcement across mediums.

Finally, the FCC's interpretation is harmonious with the statutory text and original meaning. The TCPA defines "telephone solicitation" to include "a telephone call or message … transmitted to any person" for commercial purposes. 47 U.S.C. § 227(a)(4). The ordinary 1991 meaning of "call" is "to communicate … by telephone," which readily accommodates text messaging. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 (9th Cir. 2009); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005–07 (N.D. Ill.). That alignment of statute and agency action further supports sustaining the rule under the APA.

In short, the FCC's clarification that text message solicitations fall under the DNC rules is well within the bounds of permissible regulation. It is reasonable, rooted in record-based findings, responsive to congressional direction, and consistent with statutory text. A reviewing court applying the APA's standard must uphold it.

### III.    Plaintiff Plausibly Pleads Direct Liability

Defendant incorrectly asserts that Plaintiff fails to plausibly allege direct liability. To the contrary, the Complaint provides detailed factual allegations that, taken as true at this stage, readily support a reasonable inference that Sonic itself delivered the subject telemarketing text messages. These allegations are far more than formulaic recitations of the TCPA's elements, and courts consistently hold that such facts suffice to plead direct liability under § 227(c).

Plaintiff alleges that he received telemarketing text messages in August, September, and October 2025. ECF No. 14, ¶¶ 21, 23. Those texts were not generic spam. Rather, Plaintiff alleges they were brand-linked, promotional solicitations that repeatedly and consistently tied themselves to Sonic's business: the messages "were sent directly by Sonic," included "Sonic's name, Sonic branding and Sonic offers," and communicated "to the recipient that Sonic was the advertiser and sender of the messages." ECF No. 14, ¶¶ 24–25. Plaintiff also alleges the texts included hyperlinks directing recipients to "Sonic's website and domain," and that the linked content displayed Sonic's branding, promotions, locations, contact methods, and offer-redemption features. ECF No. 14, ¶¶ 26–27. Plaintiff further alleges that the texts used "uniform campaign formatting," "repeated promotional

language," reflecting that the messages were transmitted as part of a centralized Sonic marketing initiative. ECF No. 14, ¶ 28.

These allegations are specific and concrete: they identify the timeframe of the texts (August–October 2025), establish that they occurred well after Plaintiff's DNC registration, describe the promotional nature of the messages, and set out detailed facts linking the texts to Sonic's goods and brand through branding, offers, and Sonic-directed hyperlinks. ECF No. 14, ¶¶ 21–28. Plaintiff also alleges he never consented, never invited solicitations, and never provided written permission. ECF No. 14, ¶ 22. That is classic direct-liability pleading.

"At first glance, these allegations seem like a strong basis for attributing the … [calls and text] to the Defendant. After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who she is." *See Bradshaw v. CHW Grp., Inc.*, No. 24-cv-00114 (MEF)(JBC), 2025 U.S. Dist. LEXIS 13649, at *5-6 (D.N.J. Jan. 24, 2025) ("So too as to the December 8 call. The caller allegedly introduced herself as 'Erica . . . from the Defendant.' Why then would it not be plausible to conclude that she was, in fact, 'Erica . . . from the Defendant'?").

"The logic of this approach is reflected in the decisions of any number of federal courts. *See, e.g., Marks v. Unique Lifestyle Vacations, LLC*, 2024 U.S. Dist. LEXIS 41804, 2024 WL 1051974, at *3 (E.D. Pa. Mar. 11, 2024); *Katz*

*v. CHW Grp., Inc.*, 2023 U.S. Dist. LEXIS 176206, 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023); *Smith v. Am.-Amicable Life Ins. Co.*, 2022 U.S. Dist. LEXIS 62115, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022); *Adam v. CHW Grp., Inc.*, 2021 U.S. Dist. LEXIS 170620, 2021 WL 7285905, at *5 (N.D. Iowa Sept. 9, 2021)." *Id.*; *accord Taylor v. Suntuity Solar L.L.C.*, No. 8:23-cv-00694-MSS-AEP, 2024 U.S. Dist. LEXIS 38838, at *15-16 (M.D. Fla. Mar. 6, 2024) ("Plaintiff's allegations are sufficient to plead a claim for Defendant's direct liability under the TCPA at this stage. Plaintiff alleges Defendant initiated the telemarketing calls. Specifically, Plaintiff alleges, 'The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023.' Plaintiff further alleges: 'During both calls, Plaintiff was initially provided a generic, fake name, "solar of America."' 'The only real company identified during the calls was Suntuity.'" (cleaned up)); *Stemke v. Marc Jones Constr., LLC*, No. 5:21-cv-274-30PRL, 2021 U.S. Dist. LEXIS 181916, at *6-7 (M.D. Fla. Sep. 23, 2021) ("Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls. For example, Sunpro argues that Plaintiff fails to 'support' a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that

she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls."); *see also Slominski v. Globe Life Inc.*, No. 7:23-CV-1081-D, 2024 U.S. Dist. LEXIS 24378, at *15 (E.D.N.C. Feb. 12, 2024) ("Slominski alleges that on March 14 and March 15, 2023, she received calls and voicemail messages on her cell phone that asked her to call Globe. The voicemail messages concerned 'an insurance plan.' Globe sells insurance plans. … Defendants contend Slominski fails to plausibly attribute the alleged prerecorded voicemail messages to Globe. Slominski, however, plausibly alleges enough information about the contents of the voicemail messages she received on March 14 and March 15, 2023, to survive a motion to dismiss." (cleaned up)).

The nonbinding authorities that Defendant highlights are easily distinguishable. In *Scruggs*, the Court held that the Plaintiff provided "virtually no detail about the calls at issue, let alone the identity of the caller(s), the duration, the number(s) from which they originated, the substance of the calls, or more importantly who physically placed any of the calls—i.e., CHW or some third party who merely stated they were 'associated with' CHW somehow." *Scruggs v. CHW Grp., Inc.*, No. 2:20CV48, 2020 WL 9348208, at *5 (E.D. Va. Nov. 12, 2020). That is plainly distinguishable from the pleadings here. And in *Matthews*, the Court subsequently *denied* a motion to dismiss, reasoning that, although "Plaintiff's

original complaint was devoid of factual development and contained only the conclusory allegations that the calls at issue were "from [SLIC]" and that Swisa was an employee of SLIC," the amended complaint "remedi[ed] those deficiencies" by containing "more factual support for Plaintiff's claim including the details about Swisa's license as an agent with SLIC, that the callers, including Swisa, identified themselves as calling "from SLIC," and that they were selling SLIC insurance." *Matthews v. Senior Life Ins. Co.*, No. 1:24-CV-1550-MSN-LRV, 2025 WL 1899984, at *2 (E.D. Va. July 9, 2025).

Recognizing the straightforward allegations of the Plaintiff's amended complaint, Sonic argues that the FAC should be disregarded as "sham pleading" because Plaintiff previously alleged that Sonic "delivered or caused to be delivered" the telemarketing texts and now alleges the messages were sent directly by Sonic. ECF No. 16-1, at 6–7, 23–24. That contention mischaracterizes the pleading. The FAC does not contradict Plaintiff's core allegation that he received Sonic telemarketing text messages; it clarifies and adds factual detail tying the content, branding, hyperlinks, and uniform campaign features of the texts to Sonic. ECF No. 14, ¶¶ 23–28. Accordingly, Sonic's "sham pleading" argument provides no basis for dismissal.

Plaintiff alleges direct sending by Sonic and the FAC supplies detailed factual support for that allegation: Sonic's name and branding, Sonic's promotional

offers, Sonic-directed hyperlinks, and a uniform campaign structure that reflects a coordinated Sonic telemarketing campaign. ECF No. 14, ¶¶ 24–28. That is precisely the kind of non-conclusory factual matter that satisfies Rule 8 and supports a plausible inference of direct involvement

## Conclusion

Sonic's Motion asks this Court to dismiss a consumer-privacy claim at the pleading stage by adopting an artificially narrow reading of § 227(c)(5) that would exclude the very form of telemarketing that dominates today's marketplace. But § 227(c) was enacted to protect residential subscribers from unwanted "telephone solicitations," and Congress defined that concept broadly to include telephone "call[s] or message[s]." The FCC has long implemented those protections to encompass unsolicited text messages, and Sonic's proposed rule would create a sweeping loophole that would defeat Congress's purpose and undercut the national Do-Not-Call program.

Independently, the FAC plausibly alleges Sonic's responsibility for the messages. Plaintiff does not merely recite statutory elements; he pleads concrete facts about the content, branding, hyperlinks, and uniform campaign format of the texts—facts that plausibly support direct transmission by Sonic.

For these reasons, the motion to dismiss should be denied.

DATED this 24th day of December, 2025.

/s/ Anthony I. Paronich
Anthony I. Paronich, *pro hac vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff and the proposed class*