IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| **JOE IRVIN**, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>**SONIC INDUSTRIES SERVICES, LLC**,<br><br>    Defendant. | Case No. 3:25-cv-00242-LMM<br><br>Hon. Leigh Martin May |

**<u>DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

As Sonic's Motion to Dismiss ("Motion") Plaintiff's First Amended Complaint (Dkt. 14, "FAC") shows, courts in the Eleventh Circuit have conducted a thorough statutory construction analysis of Section 227(c) of the TCPA (the sole legal basis for Plaintiff's claim), in accordance with recent binding federal precedent, and have correctly concluded that text messages (the only form of communication of which Plaintiff complains) do not fall within the purview of that provision. *See* Dkt. 16-1 at 2-3, 7-14 (analyzing, *inter alia*, *Davis* and *El Sayed*). Beyond that fundamental legal defect, which alone is dispositive here, the Motion further shows how Plaintiff's FAC is ripe for dismissal because it lacks plausible facts supporting a theory of TCPA liability. *See id.* at 14-25. Plaintiff's Opposition (Dkt. 17) does not show otherwise.

Indeed, as to the first issue, Plaintiff's Opposition largely ignores the directly on-point and well-reasoned *Davis* and *El Sayed* decisions analyzed at length in the Motion, relegating the former to a mere perfunctory footnote and omitting any discussion of the latter. *See* Dkt. 17 at 12, n.3. This is telling, as those decisions reflect highly persuasive case law in the Eleventh Circuit finding that texts are not covered by the plain language of Section 227(c) of the TCPA. They are also in accord with established Eleventh Circuit and recent Supreme Court precedent on proper statutory construction principles. *See* Dkt. 16-1 at 8-13. None of the inapposite authorities on which Plaintiff's Opposition relies compel a different result here. Thus, Plaintiff's claim fails as a matter of law and his entire FAC should be dismissed with prejudice.

Even if *arguendo* Section 227(c) covers text messages (and it does not), federal law is clear that one cannot simply regurgitate the statutory text, conclude that the "defendant and/or a third-party agent" sent the subject communications for telemarketing purposes, and expect to state a plausible TCPA liability theory sufficient to survive dismissal under Rule 12(b)(6). Yet, that is all Plaintiff has attempted to do, as the Motion argues. Plaintiff's Opposition does not refute this point, either. Consequently, and since he already had the chance to amend and failed to cure this defect, his FAC should be dismissed with prejudice on this additional basis.

I.      **Section 227(c) of the TCPA Does Not Cover Text Messages.**

Plaintiff suggests that, if the Court finds texts are not covered under Section 227(c), it will "upend[] protections for potentially hundreds of millions of Americans who receive unwanted and non-consensual text messages." Dkt. 17 at 2. However, other courts have already made this finding. And this concern, even if reasonable, must be addressed by Congress, not this Court. Indeed, as another court reaching the same sound conclusions as in *Davis* and *El Sayed* aptly held: "It is not for a court to legislate by reading into the TCPA something that is not there." *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 901 (C.D. Ill. July 21, 2025), *appeal filed sub nom.,* No. 25-2398 (7th Cir., August 12, 2025) (applying *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 392-400 (2024)); *see also Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273-74 (N.D. Fla. 2025) (ruling similarly). In short, the

"protections" Plaintiff says this Court may "upend" ***never existed in the first place*** with respect to text messages, and only Congress can provide them. Since the TCPA's enactment, however, Congress has not amended Section 227(c) to include texts, even though it easily could have done so any time in the last 30-plus years and has demonstrated an understanding of the difference between a call and a text message.[1]

Next, Plaintiff seemingly suggests that Sonic asks the Court to determine that a text message is not a "call" under ***any*** provision of the TCPA. *See* Dkt. 17 at 4-5. Not so. The issue before the Court in the Motion is simply whether a text is considered a "call" under the DNC rules in Section 227(c) of the TCPA. *See* Dkt. 16-1 at 2-3, 7-14. Thus, the vast majority of Plaintiff's Opposition, which focuses on decisions interpreting a different section of the TCPA (Section 227(b)), should be disregarded.

More specifically, Plaintiff contends that "[t]he Supreme Court, every Circuit Cour [*sic*], and the majority of district courts, even after *McLaughlin* [], disagree with Defendant's position." Dkt. 17 at 4 (internal citation omitted). He is wrong, and none of the authorities on which he relies address whether the DNC provisions in Section 227(c) extends to texts, focusing instead on a different provision governing

---

[1] Later Congressional actions underscore this point. For example, in 2018, Congress amended the TCPA to bring text messages within its scope under a different provision regarding Caller ID requirements. Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115 141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). In doing so, Congress specifically distinguished between "a call made using a voice service" from a "text message sent using a text message service." 47 U.S.C. § 227(e)(8)(A), (B). Congress has chosen not to similarly amend Section 227(c).

"automated" calls (*i.e.,* Section 227(b)) and deferring to the FCC's 2003 Order in that regard. *See id.* at 4-5, 8 (citing *Campbell-Ewald*, *Ins. Mktg. Coal.*, *Drazen*, *Hall*, *Breda*, *Gadelhak*, *Williams*, *Ashland*, *Lozano*, *Barton*, *Hudson*, *Keating, Satterfield*).[2]

For example, while Plaintiff relies heavily on the Supreme Court's 2016 ruling in *Campbell-Ewald* (*see* Dkt. 17 at 5), the Supreme Court more recently in *Facebook, Inc. v. Duguid* cited *Campbell-Ewald*, noted that "[n]either party disputes that the TCPA's prohibition also extends to sending unsolicited text messages" under Section 227(b) of the TCPA, but then reiterated that the Court merely "assume[d] that it does without considering or resolving that issue" at that time. 592 U.S. 395, 400 n.2 (2021). Therefore, *Campbell-Ewald* is not controlling here; and the Supreme Court certainly did not "ratif[y]" the FCC's 2003 interpretation that a text message is a call under the TCPA in that case or in any others, as the *Barton* court incorrectly concluded.

Similarly, in *Satterfield v. Simon & Schuster, Inc.*, the Ninth Circuit held that, under the *Chevron* doctrine, courts "must defer" to the FCC's 2003 determination that a "text message" was a "call" under Section 227(b) of the TCPA. 569 F.3d 946, 954 (9th Cir 2009). At best, *Satterfield* merely confirms that "the statute is silent as to whether a text message is a call within the Act" and, in making its ruling, the Ninth Circuit simply deferred to the FCC's 2003 Order finding texts can be "calls" under Section 227(b), in accordance with *Chevron*. *Id*. However, the Supreme Court

---

[2] *See also Davis*, 797 F. Supp. 3d at 1275 n.3 (declining to apply FCC 2003 Order).

4

overruled the *Chevron* doctrine in 2024. *See Loper*, 603 U.S. at 412. Thus, *Satterfield* is inapposite, too. Courts today need no longer defer to the FCC. Instead, after *Loper*, *McKesson*, and *Facebook*, this Court must independently interpret Section 227(c) as written by Congress at the time applying ordinary statutory construction principles, doing so without the influence of modern-day definitions and unconstrained by FCC interpretations or public policy concerns. *See* Dkt. 16-1 at 8, 12.

In sum, none of the decisions upon which Plaintiff's Opposition relies offers a binding (let alone persuasive) interpretation of the statutory term "telephone call" under Section 227(c), the provision he invokes for his claim here. Nor did Congress "endorse[]" Plaintiff's or the FCC's interpretation when it amended the TCPA in 2019 with the TRACED Act, as Plaintiff suggests. *See* Dkt. 17 at 18. Indeed, the TRACED Act did not address the treatment of text messages under Section 227(c), either. As such, Plaintiff's reliance on *Williams v. Myler* (*see id*. at 18) is likewise misplaced.

Plaintiff ultimately admits, as he must, that Section 227(c) does not reference text messages but, as Sonic's Motion anticipated (*see* Dkt. 16-1 at 10), suggests that texts are still covered because "[t]he statute defines a 'telephone solicitation' in relevant part to mean 'the initiation of a telephone *call or message* … which is transmitted to any person.'" Dkt. 17 at 19 (citing 47 U.S.C. § 227(a)(4) (emphasis supplied)). Again, Plaintiff is wrong. As Sonic noted, the reference to "message" in Section 227(a)(4) presumably refers to **artificial or prerecorded voice** "messages,"

which were regulated by the TCPA when it was enacted and fall under a different part of the statute governing automated calls that Plaintiff does not invoke here (*i.e.*, Section 227(b))—not DNC claims. *See* Dkt. 16-1 at 6 (citing *Davis and Jones*).

Per the Supreme Court, the term "message" in Section 227(a)(4) must be interpreted consistent with Congress' understanding of the term ***at the time the TCPA was enacted***. *See Loper*, 603 U.S. at 400; *see also Davis,* 797 F. Supp. 3d at 1273 (stating that the terms in Section 227(c) must be "supported by the ordinary public meaning at the time of the provision's enactment"). As discussed in the Motion, courts have correctly found that the term "telephone call or message" as used in Section 227(a)(4) could not have been interpreted in 1991 (when the TCPA was enacted) to include "text messages" regardless of their dictionary definition because texts were not yet in existence then. *See* Dkt. 16-1 at 6 (citing *Jones* and *Davis*). In other words, while Plaintiff suggests that "telephone call" should be interpreted as "any attempt to communicate with someone by telephone" (Dkt. 17 at 7), Congress could not have possibly understood a text message to be a "telephone call" when it enacted Section 227(c) because such technology did not exist at that time.

Additionally, rejecting the same argument Plaintiff makes (*see* Dkt. 17 at 12), the *Davis* court held that "Congress's use of the phrase 'telephone call or message' in a neighboring provision … shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" 797 F. Supp. 3d at 1274. But that court went further,

6

applied binding law, and held: "Although [plaintiff] would have [the court] conclude Congress used the term 'telephone call' in § 227(c)(5) and the term 'telephone call or message' in § 227(a)(4) to have identical meanings, courts should 'presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.'" *Id*. (citing *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025)). This Court should do the same.

Plaintiff's reliance on *Hulce* and *Davis v. HSBC Bank* is therefore entirely misplaced, as neither case interpreted the term "message" in Section 227(a)(4) to include "text messages," as his Opposition seemingly suggests. In fact, the Seventh Circuit in *Hulce* expressly <u>declined</u> to read into the term "telephone solicitation" any "commercial" calls regardless of their purpose because that is not how Congress defined the "telephone solicitation." *See Hulce v. Zipongo Inc.*, 132 F.4th 493, 499 (7th Cir. 2025). Here too, the Court should not read the phrase "telephone call or message" to include a form of technology that did not exist and that Congress could not have possibly contemplated when that phrase was written into the TCPA in 1991.[3]

While Plaintiff seemingly contends that federal courts may interpret statutes in ways not "expressly anticipated by Congress" (*see* Dkt. 17 at 10 (citing *Onacle, Nat'l*

---

[3] Again, "nowhere does the TCPA define 'telephone call' to include text and/or SMS messages." Dkt. 16-1 at 6 (quoting *Jones*, 792 F. Supp. 3d at 904); s*ee also Davis*, 797 F. Supp. 3d at 1273-75 (ruling similarly). Plaintiff apparently does not disagree.

7

*Cable*, *Salazar*, and *New Prime Inc.*)), the Supreme Court flatly refused to interpret the TCPA as an "agile tool" to address advances in automated technology in *Facebook*, instead holding that it "must interpret what Congress wrote." 592 U.S. at 409. Plaintiff invites this Court to do the opposite here by interpreting "telephone call or message" in Section 227(a)(4) to address advances in technology that did not exist in 1991, when Section 227(c) was enacted. The Court should decline this invitation.

Plaintiff also attempts to distinguish cases like *Davis* and *Jones* based on the "FCC's longstanding interpretation of 'call' to include text messages." Dkt. 17 at 13. But as the Motion notes, the FCC's rulemaking authority under Section 227(c) was limited to "the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations" and **in the 9 months after December 20, 1991**. 47 U.S.C. §§ 227(c)(1)-(3). Those regulations were implemented in **1992**, as Congress authorized, and also do not refer to text messages. *See generally In re Rules & Regs. Implementing the TCPA*, Report and Order, 7 FCC Rcd. 8752 (Oct. 16, 1992) (implementing 47 C.F.R. § 64.1200). Thus, the FCC was <u>not</u> "exercis[ing]" its limited rulemaking authority under Section 227(c) by **subsequently** "codifying that the [DNC] rules cover text message solicitations to wireless numbers" in 47 C.F.R. § 64.1200(e) in 2023, as Plaintiff incorrectly posits. Cases like *Zimmer* on which Plaintiff also relies for his counterargument in this regard (*see* Dkt. 17 at 17-19) are therefore inapposite.

8

In any event, the FCC's 2003 interpretation is not dispositive here. While Plaintiff is correct that the Supreme Court's decision in *McLaughlin* allows courts to afford "respect" to FCC interpretations, it does ***not*** instruct courts to afford any ***deference*** to them. *See Davis*, 797 F. Supp. 3d at 1276 ("[E]ven assuming the FCC order clearly defined 'telephone calls' as that term is used in § 227(c)(5), 'appropriate respect' for that conclusion would not require a different outcome here.").

Moreover, the Supreme Court has held that respect to agency interpretations is only warranted "when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Loper,* 603 U.S. at 386, 388, 394; *see also Davis,* 797 F. Supp. 3d at 1273 (applying *McLaughlin* and dismissing with prejudice, holding: "Certainly, no ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case."). The modern interpretations at issue, adopted more than a ***decade*** after the TCPA was enacted, are not "contemporaneous" or "consistent" with its enactment or the FCC's limited authority under Section 227(c), and thus carry no weight here. And Plaintiff's cited authorities on this point are readily distinguishable, as none involved deference to prior FCC interpretations as to whether a text is a call under Section 227(c). *See* Dkt. 17 at 16-17 (citing *Harriel*, *Wilson*, *Lirones*, and *Lyman*, all discussing whether a cell phone can be "residential" under the TCPA).

9

Finally, while Plaintiff relies on (albeit without meaningfully analyzing) a handful of decisions from district courts in other circuits that have reached a different conclusion than the courts in *Davis*, *Jones*, and *El Sayed* (*see* Dkt. 17 at 7, 9, 10 (citing *Mujahid*, *Wilson v. Medvidi*, *Wilson v. Better Mortg. Corp.*, and *Wilson v. Skopos Fin., LLC*)), those holdings are unpersuasive, distinguishable, and inapposite.

In *Mujahid v. Newity, LLC*, for example, the court initially acknowledged that texts did not exist when the TCPA was enacted. But then, the court (i) did not perform a statutory construction analysis consistent with recent Supreme Court rulings; (ii) gave considerable deference to the FCC's 2003 Order relating to Section 227(b), which was not at issue there (nor is it here); (iii) relied heavily on one modern dictionary definition of "call" from 2002 to conduct its analysis of whether texts fall within the definition of "telephone solicitation" under Section 227(c); and (iv) did not interpret the statute as it existed in 1991, when text messages did not yet exist, as the Supreme Court requires. *See* 2025 WL 3140725, at *2-3 (N.D. Ill. Nov. 10, 2025).[4]

In *Wilson v. Medvidi Inc.*, the court curiously held that the "plain meaning of the [term] text" refers to "both oral and written communications," despite that Section 227(c) does not reference the words "text messages" or "SMS messages" at all and could not have, as they did not yet exist at that time. *See* 2025 WL 2856295, at *2

---

[4] The court in *Wilson v. Skopos Fin., LLC* made many of the same analytical errors as the *Mujahid* court. Further, the *Mujahid* case is now stayed pending the outcome of *Jones* appeal (*see* Case No. 1:25-cv-08012, Dkt. 41) and thus carries no weight here.

(N.D. Cal. Oct. 7, 2025).[5] And, respectfully, the *Wilson v. Better Mortgage Corp.* court made similar analytical missteps, when it did not perform a proper statutory construction analysis and held "[t]he contemporary definition of 'telephone call'" as used in Section 227(c) was "not limited to oral or vocal communications" when Congress enacted it in 1991, and instead "encompassed any communication made using a telephone." 2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025) (citing, *inter alia*, *Mujahid, Satterberg,* and *Medvidi*). All told, the Court should reject Plaintiff's flawed cited authorities, follow the well-reasoned decisions cited in the Motion on this issue, and dismiss his entire FAC with prejudice on this basis. *See Davis*, *supra*.

## II.     Plaintiff Also Fails to Plausibly Allege a Theory of TCPA Liability.

As to his failure to plausibly allege a direct or vicarious TCPA liability theory (s*ee* Dkt. 16-1 at 14-25), Plaintiff's Opposition focuses only on the issue of direct TCPA liability.[6] *See* Dkt. 17 at 20-24. Plaintiff's counterarguments also fail.

**First**, all of the decisions on which Plaintiff relies on the issue of direct TCPA liability are distinguishable, unpersuasive, and should not be applied here. *See* Dkt.

---

[5] Applying *Medvidi* would also lead to absurd results, including potentially extending TCPA liability to emails, which are far outside the TCPA's purview. *See, e.g., McCarrell v. Offers.com LLC*, 2019 WL 3220009, at *3 (W.D. Tex. July 16, 2019).

[6] By not addressing vicarious liability, Plaintiff has conceded the issue. *See UBS Fin. Servs., Inc. of Puerto Rico v. Efron*, No. 23-13879, 2025 WL 1833578, at *10 (11th Cir. July 3, 2025) ("A passing reference to an issue in a brief . . . and the failure to make arguments and cite authorities in support of an issue waives it."); *Tuso v. Lennar Corp.,* 2024 WL 1239474, at *3 (S.D. Fla. Mar. 22, 2024) (ruling similarly).

17 at 21-23 (citing *Bradshaw*, *Marks*, *Smith*, *Adam*, *Taylor*, *Stemke*, and *Slominski*). For example, the ill-reasoned *Bradshaw v. CHW Grp., Inc.* case stands in stark contrast to the weight of well-reasoned authority on the accepted standards for pleading direct TCPA liability in the Motion. In fact, the *Bradshaw* court did not even ***discuss*** (let alone properly apply) those standards. *See generally* 763 F. Supp. 3d 641 (D.N.J. 2025). Moreover, the *Bradshaw* court only acknowledged "at first glance" the plaintiff's argument that the caller identified the defendant "seem[s]" like a basis for attributing the call to the defendant. *Id.* at 646. At the same time, the court acknowledged that "dishonesty about one's identity [over the phone] is at least somewhat common—and therefore, it will not always make sense to conclude that the person on the other end of the line is who they say they are." *Id.* at 647. In other words, the court seemingly acknowledged the mere content of a call alone is an insufficient basis on which to infer direct liability—which, as the Motion shows, is what most courts have held. But crucially, the court relied on <u>neither</u> of these theories but instead relied on other factual allegations in that case to conclude that the defendant placed the calls at issue—*i.e.*, plaintiff affirmatively reached out to (called) the defendant and spoke to an ***employee*** there. *Id*. Plaintiff did not allege such facts here. Thus, even if *Bradshaw* was well-reasoned (and it is not), it is inapposite.

In *Marks v. Unique Lifestyle Vacations, LLC*, 2024 WL 1051974, at *3 (E.D. Pa. Mar. 11, 2024), a case on which the *Bradshaw* court heavily relied, the plaintiff

alleged he asked the callers to identify themselves, and that he compared the incoming phone numbers to phone number lists on the internet where consumers complained about telemarketing from the same defendant. Such facts are not pled here.

The *Smith v. Am.-Amicable Life Ins. Co.* court erred by misapplying and conflating the standards for pleading "traceability" for Article III standing under Rule 12(b)(1) with the more precise standards for pleading TCPA liability theories under Rule 12(b)(6), where an indirect connection to a call will not suffice. *See* 2022 WL 1003762, at *1–2 (E.D. Pa. Apr. 4, 2022). These are distinct legal concepts with different pleading requirements, as other courts have recognized. *Cf. Bank v. GoHealth, LLC,* 2021 WL 2323282, at *6–12 (E.D.N.Y. Mar. 8, 2021), *report and rec. adopted,* 2021 WL 1884671 (May 11, 2021) (recognizing this distinction).[7]

*Adam v. CHW Grp., Inc.* was likewise wrongly-decided, as the court misinterpreted the defendant's cited authorities on this issue—*i.e., Aaronson*, *Childress*, *Frank,* and *Sheski*, three of which are cited in Sonic's Motion—and held those plaintiffs "made no allegations that the defendant placed the calls at issue." 2021 WL 7285905, at *6 (N.D. Iowa Sept. 9, 2021). In reality, the plaintiffs in each of those

---

[7] The *Bank* court declined to dismiss on standing grounds under Rule 12(b)(1) because there were facts suggesting an indirect connection between plaintiff and the subject calls, which meets the Article III "traceability" element, but dismissed on direct liability grounds because plaintiff pled no facts showing a direct connection. *Id*. Again, Rule 12(b)(6) requires a direct connection between the plaintiff and defendant for direct TCPA liability to attach. *See* Dkt. 16-1 at 16-17, 20.

four cases had alleged, in a similarly conclusory and equivocating fashion, that <u>either</u> the defendants physically initiated (or were so involved as to be deemed to have physically initiated) the at-issue calls <u>and/or</u> that third parties did, which was deemed insufficient. That is precisely what Plaintiff attempted here. *See* Dkt. 16-1 at 22-24.

In *Taylor v. Suntuity Solar LLC*, the plaintiff alleged *inter alia* that the calls "followed the same script" and that she received an email from "a call center agent of the Defendant" immediately following the second call, "which confirmed Plaintiff spoke with a representative of Defendant during the call." 2024 WL 964199, at *1-6 (M.D. Fla. Mar. 6, 2024). Similarly, in *Stemke v. Marc Jones Constr., LLC,* the plaintiff alleged she or her attorneys somehow "***confirmed***" that one of the phone numbers used by one of the callers "***belong[ed]***" to the defendant. 2021 WL 4340424, at *2–3 (M.D. Fla. Sept. 23, 2021) (emphasis added). Finally, the plaintiff in *Slominski v. Globe Life Inc.* alleged that she received several identical pre-recorded calls from the defendant, each asking her to call the defendant back at the same number. *See* 2024 WL 556978, at *1 (E.D.N.C. Feb. 12, 2024). Plaintiff pleads no such facts here.

**Second**, Plaintiff misconstrues Sonic's "sham pleading" argument. *See* Dkt. 16-1 at 6-7, 23. He contends "Sonic argues that the FAC should be disregarded as 'sham pleading' because Plaintiff previously alleged that Sonic 'delivered or caused to be delivered' the telemarketing texts and now alleges the messages were sent directly by Sonic." Dkt. 17 at 24. That grossly mischaracterizes the contents of his

14

original Complaint, where he contradictorily alleged that the subject texts were sent by "Defendant *and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf.*" Dkt. 1, ¶¶ 31, 33 (emphasis added). In the Eleventh Circuit, "a plaintiff may not directly contradict the facts set forth in an original complaint"—as Plaintiff did here—"in a[ ] 'transparent attempt ... to amend his pleading[s] in order to avoid a dispositive defense' raised by a defendant and where the amended complaint directly contradicts the original complaint," and this Court may "disregard the contradictory and manipulated allegations" in his FAC when ruling. *Rubinstein v. Keshet Inter Vivos Trust*, 2018 WL 8899230, at *5 (S.D. Fla. Oct. 17, 2018) (citations omitted, cleaned up). The Opposition gives this Court no reason to rule differently.

**Third**, in tacit recognition that the weight of applicable authority is against him, Plaintiff tellingly ignores all but two cases cited in the Motion on this point, and even then, he misconstrues those cases. *See* Dkt. 17 at 23-24 (discussing *Scruggs* and *Matthews*). In each, the plaintiffs took the same flawed "either/or" approach to pleading TCPA liability Plaintiff employed in this case, which resulted in dismissal in those cases on direct TCPA liability grounds. The result should be the same here.

In sum, while texts are not covered by the DNC provisions, which alone is dispositive, the FAC should be nevertheless dismissed for failing to allege a plausible direct TCPA liability theory. And by ignoring Sonic's request for a dismissal with prejudice (*see* Dkt. 16-1 at 14, n.4), Plaintiff conceded that point, too. *See Tuso*, *supra*.

Dated: January 14, 2026

Respectfully submitted, By:

/s/ *Spencer M. Stephens*
**BRADLEY ARANT BOULT CUMMINGS LLP**
Nancy H. Baughan (Georgia Bar No. 042575)
Spencer M. Stephens (Georgia Bar No. 920774)
nbaughan@bradley.com
smstephens@bradley.com
1230 Peachtree Street NE, Suite 2100
Atlanta, GA 30309
(404) 868-2100

**MANATT, PHELPS & PHILLIPS, LLP**
A. Paul Heeringa (admitted *pro hac vice*)
151 N. Franklin Street, Suite 2600
Chicago, Illinois 60606
Tel: (312) 529-6300
Email: pheeringa@manatt.com

*Counsel for Sonic Industries Services, LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned hereby certifies that this document has been prepared in accordance with Local Rule 5.1(C).

Dated: January 14, 2026　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　*/s/ Spencer M. Stephens*
　　　　　　　　　　　　　　　　　　Spencer M. Stephens
　　　　　　　　　　　　　　　　　　*Counsel for Sonic Industries Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket on January 14, 2026, which served the same electronically upon all counsel of record.

Dated: January 14, 2026　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　*/s/ Spencer M. Stephens*
　　　　　　　　　　　　　　　　　　Spencer M. Stephens
　　　　　　　　　　　　　　　　　　*Counsel for Sonic Industries Services, LLC*